O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GIBSON BRANDS, INC., a Delaware corporation, | ) ) ) | Case No. CV 14-00609 DDP (SSx) |
| | ) ) | **ORDER DENYING MOTION TO TRANSFER VENUE** |
| Plaintiff, | ) ) | |
| v. | ) ) | [Dkt No. 9] |
| JOHN HORNBY SKEWES & CO. LTD., | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

Before the court is Defendant John Horby Skewes & Co. Ltd. ("JHS")'s Motion to Transfer. (Dkt. No. 9.) The matter is fully briefed and suitable for decision without oral argument. Having considered the parties' submissions, the court adopts the following order denying the motion.

I.   **Introduction**

Plaintiff Gibson Brands, Inc. ("Gibson"), a developer, manufacturer, and seller of musical instruments, is a Delaware corporation with a principal place of business in Nashville, Tennessee. (Declaration of Bruce Mitchell in Opposition to Motion ¶

2; Complaint ¶ 2). Defendant JHS, a distributor of musical instruments, is a United Kingdom corporation with a principal place of business in Leeds, United Kingdom. (Compl. ¶ 4.)

On January 27, 2014, Gibson filed the instant action before this court asserting claims for trademark infringement, unfair competition, trademark dilution, and other related causes of action under federal, state, and common law. (Dkt. No. 1) The complaint asserts that JHS promoted or sold products containing Gibson trademarks without authorization, including the sales of infringing goods through distributors with stores located in California and via internet sales to customers in California. (See Complaint ¶¶ 2, 5, 20, 24.)

On April 1, 2014, JHS filed the instant motion seeking an order transferring this action to the Middle District of Tennessee. (Dkt. No. 9.) In an unusual twist for a motion to transfer, the defendant seeks to have the action transferred to the judicial district where the plaintiff is based.

## II   Legal Standard

Motions for change of venue based on convenience are governed by 28 U.S.C. section 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, even when venue is proper where the action is pending, section 1404(a) provides the court with the discretion to transfer an action to a different venue under certain circumstances.

1    The analysis for transfer is two-fold. First, the defendant
2 must establish that the matter "might have been brought" in the
3 district to which transfer is sought. 28 U.S.C. § 1404(a). This
4 includes demonstrating that subject matter jurisdiction, personal
5 jurisdiction, and venue would have been proper if the plaintiff had
6 filed the action in the district to which transfer is sought.
7 Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).

8    Second, the Court must balance three general factors: (1) the
9 convenience of the parties; (2) the convenience of the witnesses;
10 and (3) the interest of justice. The court construes these factors
11 broadly to consider the specific facts appropriate in a given case
12 E. & J. Gallo Winery v. F. & P.S.A., 899 F.Supp. 465, 466 (E.D.
13 Cal. 1994).

14    Substantial weight is generally accorded to the plaintiff's
15 choice of forum, and a court should not order a transfer unless the
16 "convenience" and "justice" factors set forth above weigh heavily
17 in favor of venue elsewhere. Sec. Investor Prot. Corp. v. Vigman,
18 764 F.2d 1309, 1317 (9th Cir. 1985). The party seeking the transfer
19 bears the burden of persuasion. HollyAnne Corp. v. TFT, Inc., 199
20 F.3d 1304, 1307 n. 2 (Fed. Cir. 1999); Commodity Futures Trading
21 Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

22

23 **III. Discussion**

24    **A.   Venue in the Middle District of Tennessee**

25    The court concludes that this action "might have been brought"
26 in the Middle District of Tennessee because the requirements for
27 subject matter jurisdiction, personal jurisdiction, and proper
28 venue are met. 28 U.S.C. § 1404(a); Hoffman, 363 U.S. at 343-44.

First, because the claims are brought under the federal Lanham Act, the Middle District of Tennessee, like all district courts, has subject matter jurisdiction under 28 U.S.C. § 1331. Second, the Middle District of Tennessee could exercise personal jurisdiction over Gibson because Gibson's principal place of business is in Nashville, Tennessee. See Daimler AG v. Bauman, 134 S. Ct. 746, 772, 187 L. Ed. 2d 624 (2014) ("[A] State can exercise general jurisdiction where a corporate defendant has its corporate headquarters, and hence its principal place of business within the State.") Third, venue is proper in "a judicial district in which a substantial part of the events ... giving rise fo the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. 1391(b)(2). It appears undisputed that the trademarks at issue are registered to Gibson's principal place of business in Nashville, Tennessee. (See Compl. at 17-23.)

As venue would be appropriate in the forum to which the movant seeks transfer, the court proceeds to balance the three general factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. E. & J. Gallo Winery, 899 F.Supp. at 466.

**B.   Convenience of the Parties and Witnesses**

As noted, in determining the convenience of the parties, the court generally gives deference to the plaintiff's choice of forum. Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) ("Despite the broad discretion afforded the district court in determining whether to transfer venue, a plaintiff's choice of venue is generally accorded deference.");

1    Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("It is often

2    said that the plaintiff may not, by choice of an inconvenient

3    forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting

4    upon him expense or trouble not necessary to his own right to

5    pursue his remedy. But unless the balance is strongly in favor of

6    the defendant, the plaintiff's choice of forum should rarely be

7    disturbed"). However, "[t]he plaintiff's choice is given less

8    weight where the plaintiff is a nonresident or the chosen forum

9    lacks any significant contact with the activities giving rise to

10   the litigation." Catch Curve, Inc. v. Venalii, Inc., 2006 WL

11   4568799, at *2 (C.D. Cal. 2006).

12        Here, Gibson chose to file the instant action in this

13   district. Although, as discussed below, the forum does have

14   contacts with the activities giving rise to the litigation, Gibson

15   is not a resident of California. (See Compl. ¶¶ 5, 20, 24.)

16   Accordingly, Gibson's choice of forum is accorded some but not

17   strong deference.

18        JHS asserts that the Middle District of Tennessee is more

19   convenient for it because Nashville is closer to the United Kingdom

20   than California. (Reply at 2.) However, the court is not persuaded

21   that this is a significant factor supporting transfer. Plaintiff

22   has submitted a sampling of flight travel offerings suggesting that

23   the travel time and cost of travel do not vary significantly

24   between the United Kingdom and this district relative to the Middle

25   District of Tennessee. (See Declaration of Bruce Mitchell in

26   Support of Opposition ¶ 19 & Ex. K.) Defendant has not pointed to

27   any evidence supporting its contention regarding travel time and

28

cost or otherwise demonstrating the relative degree of convenience
for it between the forums.

JHS also asserts that the Middle District of Tennessee would
be more convenient to non-party witnesses. It asserts that the law
firms that handled, or are handling, the Gibson trademark
applications are located in Nashville, Tennessee, Oklahoma City,
Oklahoma, and Atlanta, Georgia. (Motion at 6; Declaration of Brent
M. Davis in Support of Motion ¶ 5.) However, Gibson asserts that
these firms have no relationship to the present litigation and that
Gibson's exclusive intellectual property counsel since 2008, who is
counsel of record in this case, is based in Los Angeles and does
not have an office in Tennessee. (Declaration of Bruce Mitchell in
Support of Opposition ¶ 13.) Because JHS has not specifically
stated it intends to call attorneys or others from the out-of-state
firms as witnesses and has not explained the subject matter or
significance of their testimony, the court places little weight on
the possibility of such testimony. JHS also asserts that it intends
to call as an expert witness George Gruhn, who resides in
Nashville, Tennessee. (See Motion at 3-4; Reply at 3-4.)

Gibson contends that this district is a more convenient forum
for it and non-parties whom it expects to call as witnesses. It
asserts that Gibson has offices in California and anticipates
calling employee witnesses in California with personal knowledge
relevant to the suit (although it does not specify the subject
matter of their testimony). (See Opposition at 14; Declaration of
Bruce Mitchell in Support of Opposition ¶ 13.) As to non-parties,
Gibson asserts that many of its major distributors are located
and/or headquartered in California. (Mitchell Decl. ¶ 14 & Ex. G.)

In particular, Gibson asserts that it is likely to call employees
of Guitar Center, which is based in California, as non-party
witnesses (although it likewise does not specify the subject matter
of such anticipated testimony). (Id. ¶ 14.)

On balance, the court finds that the interests of the parties
and witnesses do not favor transfer. The sole fact asserted by JHS
to which the court accords any weight is that a single expert
witness it intends to call resides in Tennessee. This is not a
sufficient basis to overcome the limited deference owed to Gibson's
choice of forum, particularly in light of Gibson's reasonable
explanation as to why it finds this district to be more convenient
to it than its home district.

**C. The Interest of Justice**

In analyzing the "interests of justice," a number of factors
are potentially relevant. These include: (1) the location where the
relevant agreements were negotiated and executed, (2) the state
that is most familiar with the governing law, (3) the plaintiff's
choice of forum, (4) the respective parties' contacts with the
forum, (5) the contacts relating to the plaintiff's cause of action
in the chosen forum, (6) the differences in the costs of litigation
in the two forums, (7) the availability of compulsory process to
compel attendance of unwilling non-party witnesses, (8) the ease of
access to sources of proof, and (9) judicial economy. See Stewart
Org. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988); Van Dusen v.
Barrack, 376 U .S. 612, 616 (1964); Jones v. GNC Franchising, Inc.,
211 F.3d 495, 498-99 (9th Cir. 2000)

As explained below, these factors are generally neutral or do
not favor transfer.

1

2    **1.   Location of Agreement**

3        This factor is not relevant as there are no agreements at

4    issue.

5    **2.   State Most Familiar with Governing Law**

6        This factor is neutral. Federal district courts are equally

7    capable of applying federal law. See <u>Allstar Mktg. Grp., LLC v.</u>

8    <u>Your Store Online, LLC</u>, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) ("As

9    plaintiffs' claims are primarily federal trademark and copyright

10   claims..., the factor carries little weight.  Courts in this

11   district and the Eastern District of Wisconsin are equally capable

12   of applying federal law.")

13   **3.   Plaintiff's Choice of Forum**

14       As discussed above, although Gibson's choice of forum is given

15   less weight because it is a nonresident, it is still entitled to a

16   degree of deference. See <u>Catch Curve, Inc. v. Venalii, Inc.</u>, 2006

17   WL 4568799, at *2 (C.D. Cal. 2006). This factor thus weighs against

18   transfer, albeit not strongly.

19   **4.   Contacts with the Forum**

20       This factor is essentially neutral. Although Gibson's

21   principal place of business is in Nashville, Tennessee, it appears

22   to have strong contacts with California. Gibson is registered with

23   the California Secretary of State, has multiple offices in

24   California, and appears to conduct significant business in

25   California. (<u>See</u> Mitchell Decl. ¶¶ 13-15.) JHS, for its part, is a

26   United Kingdom corporation which does not contend that it has

27   contacts with either California or Tennessee.

28

1          **5.     Contacts Relating to the Plaintiff's Cause of Action**

2          This factor weighs modestly against transfer. "In a trademark

3    infringement action, the actionable wrong takes place both where

4    infringing labels are affixed to the goods and where confusion of

5    purchasers is likely to occur." <u>Sutter Home Winery, Inc. v.</u>

6    <u>Madrona Vineyards, L.P.</u>, 2005 WL 701599, at *4 n. 2 (N.D. Cal. Mar.

7    23, 2005) (quotation marks and citation omitted). Here, Gibson

8    alleges, and JHS does not contest, that the allegedly infringing

9    products are available to and cause confusion among consumers in

10   California. Two of the companies listed in the Complaint as

11   offering the products at issue are allegedly based in California

12   and Gibson asserts that its private investigator purchased

13   allegedly infringing guitars from an out-of-state JHS distributor

14   and had them shipped to Los Angeles, California. (<u>See</u> Complaint ¶

15   5; Mitchell Decl. ¶ 15 7 Ex. I.) As JHS points out, JHS's potential

16   liability for the conduct of any of these vendors has not been

17   established and no motions have been filed on the issue. However,

18   the allegations are sufficient at this early stage in the

19   litigation to establish a relationship between the claims and this

20   forum such that this factor weighs modestly against transfer.

21        **6. The Cost of Litigation**

22        This factor weighs against transfer. The only argument JHS

23   makes in support of its contention that transfer would reduce

24   litigation costs is that hearing the case in the Middle District of

25   Tennessee would eliminate the cost of travel for one JHS expert

26   witness. (See Mot. at 6.) This is not a sufficient basis for

27   transfer, particularly as Gibson asserts that it intends to call

28

multiple employee witnesses and third party witnesses based in
California. (Mitchell Decl. ¶¶ 14, 17.)

**7. Unwilling Witnesses**

This factor weighs modestly against transfer. As noted, JHS
contends that non-party witnesses include firms involved in
prosecuting and maintaining Gibson's trademarks based in Nashville,
Tennessee, which is beyond the subpoena power of this court. (Mot.
at 10.) However, the court places little weight on this contention,
both because JHS provides no information regarding the anticipated
subject matter of the testimony or evidence it expects to seek and
because Gibson has raised questions about whether the firms in
question in fact have any relationship to the subject matter of
this litigation. (Mitchell Decl. ¶ 15.) As noted, Gibson asserts
that it is likely to call as non-party witnesses California Guitar
Center employees and consumers in California. Based on the
information before it, the court concludes that to the extent that
compulsory process is required to compel the attendance of non-
party witnesses, such power is more likely to be necessary in this
district than in the Middle District of Tennessee.

**8.  Access to Evidence**

This factor weighs against transfer. JHS contends that,
because Gibson's principal place of business is in Nashville, it
would be easier to access any evidence in Tennessee as compared to
California. (Mot. at 8.) However, JHS does not provide any
information about the type and subject matter of the evidence to
which it refers. To the extent that it refers to documents, various
courts have observed that "ease of access to documents does not
weigh heavily in the transfer analysis, given that advances in

technology have made it easy for documents to be transferred to different locations." <u>Metz v. U.S. Life Ins. Co. in City of New York</u>, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (quotation marks and citation omitted). Gibson asserts that the allegedly infringing guitars were purchased in California by Gibson's California-based private investigator, whose employees it anticipates testifying in this case. (Mitchell Decl. ¶ 17.) On the information before the court, access to evidence does not favor transfer.

**9.   Judicial Economy**

Finally, judicial economy weighs strongly against transfer. This court previously heard an action between the same parties and involving two of the same trademarks at issue in the present case. <u>See</u> <u>Gibson Brands Inc. v. Viacom International Inc., John Hornby Skewes & Co., LTD</u>, CV 12-cv-10870-DDP (AJW). Both cases involve Gibson's Flying V Body Shape design mark, U.S. Trademark Reg. No. 2051790 and Flying V Peghead design mark, U.S. Trademark Reg. No. 3976205. The court's familiarity with the parties and some of the subject matter at issue argues strongly against transfer.

In sum, balancing the information before it with respect to the convenience of the parties, the convenience of the witnesses, and the interests of justice, the court finds that JHS has not demonstrated that a transfer of venue is warranted.

1    **IV.   Conclusion**

2         For the reasons stated herein, JHS's Motion to Transfer Venue

3    is DENIED.

4

5    IT IS SO ORDERED.

6

7

8    Dated:May 28, 2014

9                                        DEAN D. PREGERSON
                                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12