John K. Buche (Bar No. 239477)
jbuche@buchelaw.com
Lindsay D. Molnar (Bar. No. 275156)
lmolnar@buchelaw.com
BUCHE AND ASSOCIATES, P.C.
9100 Wilshire Blvd., Suite 445 East Tower
Beverly Hills, California 90212
(310) 459-9120
(858) 459–9120 fax

Brent M. Davis (*Pro Hac Vice*)
bdavis@musicesq.com
BIENSTOCK & MICHAEL, P.C.
Continental Plaza
411 Hackensack, NJ 07601
(201) 525–0300
(201) 525–0133 fax

Attorneys for Defendant and Counter-Plaintiff
JOHN HORNBY SKEWES & CO. LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>JOHN HORNBY SKEWES & CO. LTD., a United Kingdom Corporation; and DOES 1 through 10,<br><br>    Defendants.<br>_____<br>JOHN HORNBY SKEWES & CO. LTD, a United Kingdom Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, a Delaware corporation,<br><br>    Defendant. | Case No.  CV 2:14-00609-DDP-SS<br><br>Hon. Dean D. Pregerson<br><br>**DEFENDANT JOHN HORNBY SKEWES & CO. LTD.'S FIRST AMENDED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**<br><br><br>Complaint filed:  January 27, 2014 |

John Hornby Skewes & Co. LTD. ("Counterclaimant" or "JHS"), by and through its attorneys Buche and Associates, P.C. and Bienstock & Michael, P.C., sets forth the following first amended counterclaims and third-party complaint against Gibson Brands, Inc. ("Gibson" or "Counterdefendant") and Bank of America ("BOA" or "Third-Party Defendant"), and respectfully alleges as follows:

## THE PARTIES

1.     JHS is an United Kingdom corporation with a principal place of business at Salem House, Parkinson Approach, Garforth, Leeds 16 LS25 2HR, United Kingdom.

2.     Gibson is a Delaware Corporation with a principal place of business at 309 Plus Park Boulevard, Nashville, Tennessee 37217.

3.     BOA is a Delaware Corporation with a principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28255.

## JURISDICTION

4.     Jurisdiction of this Court is based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1338(a) and (b) (Acts of Congress relating to trademarks and related actions), Sections 39 and 43(0) and (c) of the United States Trademark Act of 1946 ("Lanham Act"), as amended (15 U.S.C. §1121 and 1125(a)(c)).

5.     This Court has personal jurisdiction over Gibson because it has purposefully availed itself by filing the Complaint in this District.  This Court has personal jurisdiction over BOA because it has purposefully availed itself of the

2

opportunity to conduct commercial activities in this forum.  Also, both Gibson and BOA maintain continuous and systematic contacts with the forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

## FIRST COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,215,791

6.      Gibson claims it is the owner of U.S. Trademark Registration No. 2,215,791 (the "791 Registration") for the two-dimensional body shape for an electric guitar (the "'791 Body Shape").

7.      BOA is the owner of the '791 Registration.

8.      In or around 1961, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '791 Body Shape under the model designation "Les Paul."

9.      Shortly thereafter, and continuing through the 1960's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Domino, Gretsch, Guild, Hagstrom, Kay, Magnatone, Micro-Frets, Ovation, Sekova, Standel, Tele-Star and Vox.

10.     In or around 1963, Gibson switched the model designation of the guitar bearing the '791 Body Shape to the "SG."

11.    In the 1970's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Alembic, Ampeg, Electra, Godwin, Guild, Ibanez, Indy, Jaydee, Madeira, Micro-Frets, National, Ventura, Welson and Yamaha.

12.    In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Alembic, Agile, Aria, Bond, Burny, Ed Clark, Edwards, GmP, Greco, Guild, Hohner, Jaydee, Samick, Skylark, Tokai, Vantage, Westbury and Yahama.

13.    Since the 1990's to the present day, more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Aria, Arbor, Austin, Black Label, DBZ, De Armond, Dean, Ed Clark, Electrical Guitar Company, Eric Joseph Electric Guitars, ESP, Fender, First Act, Guild, Hohner, Ibanez, Jay Turser, Jaydee, Kaman, LTD, Pathmaker, Peavey, Reverend, Robin, Rock N Roll Relics, Samick, Schecter, Stagg, Tokai, Vox, Warwick, Washburn and Yamaha.

14.    Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '791 Body Shape from Gibson.

15.     Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '791 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the the '791 Body Shape.

16.     As a result of the foregoing widespread and rampant use by third-parties, the '791 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

17.     Allowing Plaintiff trademark protection, and exclusive use, for the generic '791 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

18.     Allowing continued registration of the generic '791 Body Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

19.     Upon information and belief, Gibson was well aware of the rampant third-party usage of the '791 Body Shape since the 1960's.

20.     On or around April 10, 1997, Gibson filed an application for trademark registration for the '791 Body Shape.

21.     In the that application, Lucian Wayne Beavers ("Beavers"), Vice-President and General Counsel for Gibson, made knowingly false material representations with the intent to deceive the USPTO by stating that "no other person, firm, corporation, or association has the right to use the ['791 Body Shape] in commerce, either in the identical form thereof or in such near resemblance thereto,"

despite Gibson's and Beaver's knowledge of rampant third-party usage.

22.    On June 29, 1998, David H. Berryman ("Berryman'), President of Gibson, made knowingly false material representations with the intent to deceive the USPTO by stating that Gibson had "substantially exclusive and continuous use" of the '791 Body Shape, despite Gibson's and Berryman's knowledge of rampant third-party usage.

23.    As a result of the foregoing, Gibson committed fraud upon the USPTO when prosecuting the '791 Registration.

## SECOND COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,053,805

24.    Gibson claims that it is the owner of U.S. Trademark Registration No. 2,053,805 (the "'805 Registration") for the two-dimensional body shape for an electric guitar (the "'805 Body Shape").

25.    BOA is the owner of the '805 Registration.

26.    In or around 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '805 Body Shape under the model designation "Explorer."

27.    Since the Explorer proved to be unsuccessful, Gibson ceased production of the Explorer in 1963.

28.    Upon information and belief, an extremely small number of guitars incorporating the '805 Body Shape were manufactured.

29.    In 1974, Hamer, a U.S. guitar company, began manufacturing, advertising, marketing and selling guitars, in the United States, incorporating the '805 Body Shape.

30.    Rick Nielsen, guitarist for the band Cheap Trick, began playing Hamer guitars incorporating the '805 Body Shape upon their introduction into the marketplace and these Hamer guitars were featured prominently on Cheap Trick's album art.

31.    In 1976, Music Man began running an advertisement for its amplifiers featuring Eric Clapton playing a guitar bearing a body shape identical, or substantially similar to, the '805 Body Shape.

32.    Following Hamer's lead and, in an attempt to capitalize on the public's interest in the '805 Body Shape because of the Eric Clapton/Music Man advertisement, Gibson began manufacturing guitars incorporating the '805 Body Shape again in 1976.

33.    Shortly thereafter, and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '805 Body Shape, including, but not limited to, Aria, Dean, Electra, Ibanez, Memphis, Music Man, PRS and Rhyne.

34.    In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body

shapes that are identical, or substantially similar to, the '805 Body Shape, including, but not limited to, Alembic, Arbor, Aria, BC Rich, Charvel, Dean, Electra, Hamer, Ibanez, Moonstone, PRS and Tokai.

35.    Since the 1990's to the present day, more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '805 Body Shape, including, but not limited to, Aria, Charvel, Dean, ESP, Hamer, Ibanez, Jackson, LTD, Pangborn, Peavey, Samick and Slammer.

36.    Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '805 Body Shape from Gibson.

37.    Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '805 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the the '805 Body Shape.

38.    As a result of the foregoing rampant use by third-parties, the '805 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

39.    Allowing Plaintiff trademark protection, and exclusive use, for the generic '805 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

40.    Allowing continued registration of the generic '805 Body Shape

interferes with Counterclaimant's ability to advertise and creates unfair competition.

41.     Upon information and belief, Gibson was well aware of the rampant third-party usage of the '791 Body Shape since the 1970's.

42.     On or around September 6, 1994, Gibson filed an application for trademark registration for the '805 Body Shape.

43.     Upon information and belief, Gibson made knowingly false material representations with the intent to deceive the USPTO by stating that no other person, firm, corporation, or association has the right to use the '805 Body Shape in commerce, either in the identical form thereof or in such near resemblance thereto, despite Gibson's knowledge of rampant third-party usage.

44.     Upon information and belief, Gibson made knowingly false material representations with the intent to deceive the USPTO by stating that Gibson had substantially exclusive and continuous use of the '805 Body Shape, despite Gibson's knowledge of rampant third-party usage.

45.     As a result of the foregoing, Gibson committed fraud upon the USPTO when prosecuting the '805 Registration.

## THIRD COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,007,277

46.     Gibson claims that it is the owner of U.S. Trademark Registration No. 2,007,277 on the Supplemental Register (the "'277 Registration") for the two-dimensional body shape for an electric guitar (the "'277 Body Shape").

47.     BOA is the owner of the '277 Registration.

48.     In 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '277 Body Shape under the model designation "ES-335"

49.     The '277 Body Shape was, and is, extremely similar to many other two-dimension body shapes.

50.     Shortly thereafter, and continuing throughout the 1960's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Aria, Baldwin, Coral, Custom Kraft, Danelectro, Fender, Framus, Gretsch, Guild, Guitorgan, Hagstrom, Harmony, Hofner, Hohner, Ibanez, Kay, Micro-Frets, Mosrite, National, Oahu, Ovation, St. Moritz, Standel, Strum & Drum, Supro, Teisco, Univox and Vox.

51.     In the 1970's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Acoustic, Aria, BC Kingston, Danelectro, Fender, Framus, Gretsch, Guild, Guitorgan, Hagstrom, Harmony, Hofner, Hohner, Ibanez, Kramer,[1] Micro-Frets, Mosrite, National, Ovation, Pearl, Standel, Travis Bean, Univox and

_____

[1] Gibson did not purchase Kramer until in or around 1998.

Vox.

52.    In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Antoria, Aria, Benedetto Guitars, Conn-Selmer, Daion, Danelectro, Fender, Fernandes, Gretsch, Guild, Hagstrom, Heritage, Hofner, Hondo, Ibanez, Kramer, LAG, Moonstone, Ovation, Peavey, Teisco, Tom Holmes, Travis Bean, Valencia and Yamaha.

53.    Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Agile, Anderberg, Aria, Artinger, Austin, AXL, Badwater, BiLT Guitar, Black Label, Bolin, Brian Kingston, Brian May, Burly, Canvas, Carruthers, Carvin, Cobra, Collings, Crafter, Daisy Rock, Danelectro, D'Angelico, DBZ, De Armond, Delm Guitars, Devlin, DGN, Dismal, David Thomas McNaught, Duesenberg, Eastman, Eastwood, Electrical Guitar Company, ESP, Eternity Guitars, Falbo, Fender, First Act, Framus, Fritz Brothers, Fryer Guitars, Gene Baker, Giannini, Gretsch, Guild, GZ Guitars, Hagstrom, Hamer, Hanson, Harmony, Heritage, Highland, Hofner, Hutchins Guitars, Ibanez, Jarrett, Jay Turser, JB Player, J3, Jackson, Kasuga, Kona, LAG, Legends Guitar, M&M, Martyn Booth, McCurdy, Michael Kelly Guitars, Navigator, OLP, Oscar Schmidt, Ovation,

Peavey, PRS, RC Allen, Ribbecke, Samick, Schecter, Shergold, Slick Guitars, Sparrow, Stromberg, SX, Thorn, Tony Cochran Custom, Tradition, Travis Bean, Valencia, Venture, Vox, Wal Custom, Warwick, Washburn, Wilson, Xaviere, Yamaha and Zimnicki.

54.     Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '277 Body Shape from Gibson, including Kramer at the time it adopted the '277 Body Shape.

55.     Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '277 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the '277 Body Shape.

56.     As a result of the foregoing rampant use by third-parties, the '277 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

57.     Upon information and belief, Gibson was well aware of the rampant third-party usage of the '277 Body Shape since the early 1960's.

58.     On or around September 6, 1994, Gibson filed an application for trademark registration for the '277 Body Shape on the Principle Register.

59.     The USPTO refused registration on the Principle Register stating that the '277 Body Shape "comprises the standard characteristics of an electronic guitar such as a broad based body, narrow mid section, and overall curvilinear design."

60.     On or around Jul 23, 1996, Gibson amended its application to have the '277 Body Shape placed on the Supplemental Register, stating it "is in the process of gathering evidence which clearly establishes the distinctiveness of Applicant's mark and intends to file an application to register the mark on the Principal Register at a later date once that process is complete."

61.     That process, apparently, took eighteen years, as Gibson filed an application for registration of the '277 Body Shape on the Principle Register on January 17, 2014.

62.     In this new application, Andrea E. Bates, Esq. ("Bates"), counsel for Gibson, made knowingly false material representations with the intent to deceive the USPTO by stating that the Gibson had "exclusive use [of the '277 Body Shape] for over 50 years," despite Gibson's and Bates' knowledge of rampant third-party usage.

63.     Relying on this knowingly false material representation, the USPTO approved this new application for publication.

64.     Upon publication, seventeen guitar companies have filed for extensions of time to file opposition proceedings against this generic mark that has no secondary meaning for Gibson.  The extensions have not expired.

65.     These companies are U.S. Music Corporation (Washburn), ESP Shibuya Enterprises, Inc., Cordoba Music Group, Inc. (Guild), Collings Guitars, Inc., Fender Musical Instruments Corporation, Ed Roman Enterprises, Inc., Armadillo Enterprises, Inc. (Dean), Schecter Guitar Research, Inc., Fred W. Gretsch

Enterprises, Ltd., Westheimer Corporation (Harmony), Peavey Electronics Corporation, Warwick GmbH & Co. Music Equipment KG, James Trussart Guitars, Inc., JS Technologies, Inc., Premier Builders Guild, LLC, Sadowsky Guitars, Ltd. and JHS.

66.     As a result of the foregoing, including the rampant use by third-parties, the '277 Body Shape has not, and cannot, acquire secondary meaning for Gibson.

67.     Allowing Plaintiff trademark protection, and exclusive use, for the generic '277 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

68.     Allowing continued registration of the generic '277 Body Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

## **FOURTH COUNTERCLAIM**

## **CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,051,790**

69.     Gibson claims that it is the owner of U.S. Trademark Registration No. 2,051,790 (the "'790 Registration") for the two-dimensional body shape for an electric guitar (the "'790 Body Shape").

70.     BOA is the owner of the '790 Registration.

71.     In or around 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '790 Body Shape under the model designation "Flying V."

72.     Because the Flying V proved to be unsuccessful, Gibson ceased

production of the Flying V in 1959.

73.     Upon information and belief, an extremely small number of guitars incorporating the '790 Body Shape were manufactured.

74.     Gibson began manufacturing guitars incorporating the '790 Body Shape again in 1967.

75.     Shortly thereafter and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '790 Body Shape, including, but not limited to, Aria, Dan Erlewine Guitars, Electra and Ibanez.

76.     In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '790 Body Shape, including, but not limited to, Aria, Dan Erlewine Guitars, Dean, Hamer, Ibanez, Jackson, Kramer, Moonstone, O'Hagan, Samson, Tokai and Washburn.

77.     Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '790 Body Shape, including, but not limited to, Arpeggio, Arrowhead Vee, Attila Custom Guitars, BC Rich, Blakhart, Carvin, Dan Erlewine Guitars, DBZ, Dean, DHR, Dommenget, Electrical Guitar Company, ESP, Fernandes, Floyd Rose,

Framus, GmP, Hamer, Hard Knocks, Ibanez, Jackson, Jay Turser, Kramer, Mark Katzen Guitars, Oktober Guitars, Peavey, Rebel Guitars, Reverend, Samick, Sandoval, Schecter, Sozo Guitars, Stagg, Stevens Electric Instruments, Washburn, Wild West Guitars and Zemaitis.

78.    Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '790 Body Shape from Gibson, including Kramer at the time it adopted the '790 Body Shape.

79.    Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '790 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the '790 Body Shape.

80.    As a result of the foregoing rampant use by third-parties, the '790 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

81.    Allowing Plaintiff trademark protection, and exclusive use, for the generic '790 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

82.    Allowing continued registration of the generic '790 Body Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

83.    Upon information and belief, Gibson was well aware of the rampant third-party usage of the '790 Body Shape since the 1970's.

84.   On or around September 6, 1994, Gibson filed an application for trademark registration for the '790 Body Shape.

85.   Upon information and belief, Gibson made knowingly false material representations with the intent to deceive the USPTO by stating that no other person, firm, corporation, or association has the right to use the '790 Body Shape in commerce, either in the identical form thereof or in such near resemblance thereto, despite Gibson's knowledge of rampant third-party usage.

86.   Upon information and belief, Gibson made knowingly false material representations with the intent to deceive the USPTO by stating that Gibson had substantially exclusive and continuous use of the '790 Body Shape, despite Gibson's knowledge of rampant third-party usage.

87.   As a result of the foregoing, Gibson committed fraud upon the USPTO when prosecuting the '790 Registration.

## FIFTH COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 3,976,202

88.   Gibson is the owner of U.S. Trademark Registration No. 3,976,202 on the Supplemental Register (the "'202 Registration") for the three-dimensional shape for the headstock of a guitar (the "'202 Headstock Shape").[2]

89.   In or around 1958, Gibson began manufacturing, advertising, marketing

---

[2] While the description of the mark is for three dimensions, the drawing of the mark is only in two-dimensions.

and selling electric guitars incorporating the '202 Headstock Shape under the model designation "Flying V."

90.     Because the Flying V proved unsuccessful, Gibson ceased production of the Flying V in 1959.

91.     Upon information and belief, an extremely small number of guitars incorporating the '202 Headstock Shape were manufactured.

92.     Gibson began manufacturing guitars incorporating the '202 Headstock Shape again in 1967.

93.     Shortly thereafter and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape, including, but not limited to, Aria, Electra, Ibanez and Rick Turner.

94.     In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape, including, but not limited to, Acacia, Alembic, Alfredo Bugari, Brian May, Carvin, Defil, Guild, Hamer, Ibanez, Karnak Isis, O'Hagan, Rockinger, Samson, Solo Guitars and Tokai.

95.     Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric

guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape, including, but not limited to, Alembic, AMG Guitars, Arpeggio, Attila Custom Guitars, Brian May, Carvin, Casper, Framus, Fryer Guitars, Fury, Guild, Hamer, Hard Knocks, Henman Guitars, Hohner, Ibanez, Jackson, Jay Turser, Larkin, Mark Katzen Guitars, Mobius, Oktober Guitars, Rick Turner, Samick, Shredneck, Steen Genesis and Stevens Electric Instruments.

96.   Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '202 Headstock Shape from Gibson.

97.   Upon information and belief, advertising and sales of third-party guitars bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape equal or exceed the advertising and sales of Gibson guitars bearing the '202 Headstock Shape.

98.   As a result of the foregoing rampant use by third-parties, the '202 Headstock Shape is a generic electric guitar headstock shape and does not function as a source identifier.

99.   As a result of the foregoing rampant use by third-parties, the '202 Headstock Shape has not, and cannot, acquire secondary meaning for Gibson.

100.  Allowing Plaintiff trademark protection, and exclusive use, for the generic '202 Headstock Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

101.  Allowing continued registration of the generic ''202 Headstock Shape

interferes with Counterclaimant's ability to advertise and creates unfair competition.

102.   Upon information and belief, Gibson was well aware of the rampant third-party usage of the '202 Headstock Shape since the 1970's.

103.   On or around January 13, 2011, Gibson applied for registration of the '202 Headstock Shape to the Supplemental Register.

104.   In that application, Bates, again, made knowingly false material representations with the intent to deceive the USPTO by stating that "no other person, firm, corporation, or association has the right to use the ['202 Headstock Shape] in commerce, either in the identical form thereof or in such near resemblance thereto," despite Gibson's and Bates' knowledge of rampant third-party usage.

105.   As a result of the foregoing, Gibson committed fraud upon the USPTO when prosecuting the '202 Registration.

## SIXTH COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 1,567,052

106.   Gibson claims that it is the owner of U.S. Trademark Registration No. 1,567,052 (the "'052 Registration") for the two-dimensional shape for the headstock of a guitar (the "'052 Headstock Shape").

107.   BOA is the owner of the '052 Registration.

108.   In or around 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '052 Headstock Shape under the model designation "Explorer."

109. Gibson ceased production of the Explorer in 1963.

110. Upon information and belief, an extremely small number of guitars incorporating the '052 Headstock Shape were manufactured.

111. In 1974, Hamer, a U.S. guitar company, began manufacturing, advertising, marketing and selling guitars, in the United States, guitars incorporating the '052 Headstock Shape.

112. Rick Nielsen, guitarist for the band Cheap Trick, began playing Hamer guitars incorporating the '052 Headstock Shape upon their introduction into the marketplace and these Hamer guitars were featured prominently on Cheap Trick's album art.

113. In 1976, Music Man began running an advertisement for its amplifiers featuring Eric Clapton playing a guitar bearing a body shape identical, or substantially similar to, the '805 Body Shape, the body shape associated with the '052 Headstock Shape.

114. Following Hamer's lead and, in an attempt to capitalize on the public's interest in the '805 Body Shape because of the Eric Clapton/Music Man advertisement, Gibson began manufacturing guitars incorporating the ''052 Headstock Shape again in 1976.

115. Shortly thereafter and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or

substantially similar to, the '052 Headstock Shape, including, but not limited to, Dean, Electra, Hamer, Ibanez, J. Frog, Kramer, Music Man, Rhyne and Roscoe.

116.   Gibson admits that Kramer was using the '052 Headstock Shape by referring to the '052 Headstock Shape in its Complaint as the "Kramer Headstock."

117.   In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape, including, but not limited to, Arbor, Carvin, Charvel, Electra, Hamer, Jackson, Kramer, Ovation, Paul Cs, Robin Guitars, Roscoe, Tokai, Washburn and Yamaha.

118.   Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape, including, but not limited to, Alvarez, Aria, Charvel, ESP, Fernandes, Fury, Gary Kramer Guitar Company, Hamer, Jackson, Kramer, LAG, Ormsby Guitars, Palermo, Peavey, Roscoe and Washburn.

119.   Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '052 Headstock Shape from Gibson.

120.   Upon information and belief, advertising and sales of third-party guitars bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape equal or exceed the advertising and sales of Gibson guitars bearing

the '052 Headstock Shape.

121. As a result of the foregoing, the '052 Headstock Shape is a generic shape for the headstock of a guitar and does not function as a source identifier.

122. Allowing Plaintiff trademark protection, and exclusive use, for the generic '052 Headstock Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

123. Allowing continued registration of the generic '052 Headstock Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

124. On or around October 3, 1988, Gibson filed an application for trademark registration for the '052 Headstock Shape.

125. Upon information and belief, Gibson made knowingly false material representations with the intent to deceive the USPTO by stating that no other person, firm, corporation, or association has the right to use the '052 Headstock Shape in commerce, either in the identical form thereof or in such near resemblance thereto, despite Gibson's knowledge of rampant third-party usage.

126. Upon information and belief, Gibson made knowingly false material representations with the intent to deceive the USPTO by stating that Gibson had substantially exclusive and continuous use of the '052 Headstock Shape, despite Gibson's knowledge of rampant third-party usage.

127. As a result of the foregoing, Gibson committed fraud upon the USPTO when prosecuting the '790 Registration.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Defendant and Counterclaimant and Third-Party Plaintiff JOHN HORNBY SKEWES & CO. LTD. prays for judgment as follows:

A.      Cancellation of U.S. Trademark Registration Nos. 2,215,791; 2,053,805; 2,007,277; 2,051,790; 3,976,202; and 1,567,052;

B.      That JHS be awarded costs of suit incurred herein, including attorneys' fees and expenses; and

C.      For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Defendant JOHN HORNBY SKEWES & CO. LTD. demands trial by jury on all issues so triable.


Dated:  September 5, 2014            BUCHE AND ASSOCIATES, P.C.

                                    By: */s/ John K. Buche*
                                        John K. Buche (Bar No. 239477)
                                        Lindsay D. Molnar (Bar. No. 275156)

                                        BIENSTOCK & MICHAEL, P.C.
                                        Brent M. Davis (*Pro Hac Vice*)

                                        Attorneys for Defendant and Counter-
                                        Plaintiff JOHN HORNBY SKEWES &
                                        CO. LTD.

1

**CERTIFICATE OF SERVICE**

2

3

The undersigned hereby certifies that a true and correct copy of

4

**DEFENDANT JOHN HORNBY SKEWES & CO. LTD.'S FIRST AMENDED**

5

**COUNTERCLAIMS AND THIRD-PARTY COMPLAINT** has been served on

6

7

this date to all counsel of record, if any to date, who are deemed to have consented to

8

electronic service via the Court's CM/ECF system per Civ. L.R.5-3.2. Any other

9

counsel of record will be served by electronic mail, facsimile and/or overnight

10

11

delivery upon their appearance in this matter.

12

I declare under penalty of perjury of the laws of the United States that the

13

foregoing is true and correct. Executed this 5th day of September, 2014 at La Jolla,

14

15

California.

16

17

Date:  September 5, 2014          BUCHE AND ASSOCIATES, P.C.

18

By: */s/ John K. Buche* _____

19

John K. Buche (Bar No. 239477)

20

21

22

23

24

25

26

27

28