O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOHN HORNBY SKEWES & CO. LTD.,<br><br>　　　　　Defendant. | Case No. CV 14-00609 DDP (SSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE/DISMISS DEFENDANT'S AMENDED DEFENSES, AMENDED COUNTERCLAIMS, AND THIRD PARTY COMPLAINT**<br><br>[Dkt. No. 46] |

　　　Presently before the Court is Plaintiff's motion to strike or dismiss certain of Defendant's amended defenses and counterclaims, as well as its third-party complaint against Bank of America, in this trademark infringement case. Having considered the parties' submissions and heard oral argument, the court adopts the following order.

**I.　BACKGROUND**

　　　The parties are manufacturers of electric guitars. Plaintiff, in a complaint filed on January 27, 2014, alleges that it manufactures distinctively-shaped guitars, that the designs of those guitars are trademarks (collectively, "the marks"), and that

the marks are famous and enjoy substantial goodwill in the electric guitar market. (Compl. ¶¶ 10-17.) Plaintiff also alleges that the marks are used exclusively by Plaintiff. (Id. at ¶ 18.) Plaintiff further alleges that Defendant's products infringe Plaintiff's trademarks, using Plaintiff's marks without authorization in both its product designs and its advertising. (Id. at ¶ 20-22.) Plaintiff also alleges related trademark counterfeiting, trademark dilution, and trade dress infringement claims, as well as unfair competition and false advertising claims under federal and California law.

On May 30, 2014, Defendant filed an Answer, asserting various affirmative defenses, and a Counterclaim. Those pleadings were the subject of an order striking or dismissing the defenses and counterclaims, but granting leave to amend as to some defenses and all the counterclaims. (Dkt. No. 29.) On September 5, 2014, Defendant filed an Amended Answer, an Amended Counterclaim, and Third Party Complaint against Bank of America as a third party defendant. (Dkt. Nos. 30 & 31.) In the Amended Answer, Defendant presents affirmative defenses of laches; "waiver, acquiescence, and estoppel"; unclean hands; failure to mitigate damages; duplicativeness of claims; fraud; and inapplicability of punitive damages claims for various constitutional and statutory reasons. (Am. Answer ¶¶ 67-88.) Defendant's Amended Counterclaim alleges, with regard to each mark at issue, that third-party companies have used the marks over a period of decades; that Plaintiff knew of the use; that the third-party companies were not licensees or subsidiaries of Plaintiff; that after decades of "rampant third-party usage" Plaintiff filed applications for trademark

2

registration of the marks; and that Plaintiff misrepresented on those applications that it had "substantially exclusive and continuous use" of the marks. (Am. Counterclaim, passim.)

Plaintiff now moves to strike or dismiss certain of Defendant's affirmative defenses in the Amended Answer, the Amended Counterclaim, and the Third Party Complaint.

## II. LEGAL STANDARD

A court may strike any "insufficient defense" or "immaterial" matter from a pleading. Fed. R. Civ. P. 12(f). "To show that a defense is 'insufficient,' the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal quotation marks omitted). "As motions to strike a defense as insufficient are disfavored, they will not be granted if the insufficiency of the defense is not clearly apparent." J & J Sports Prods., Inc. v. Romero, No. 1:11-CV-1880-AWI-BAM, 2012 WL 2317566 (E.D. Cal. June 18, 2012).

Any "claim for relief in any pleading," including a counterclaim, may be dismissed if it fails to state a claim for relief. Fed. R. Civ. P. 12(b)(6). A claim may be dismissed under Rule 12(b)(6) only if it "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." Williams v. Gerber Products Co., 552

3

F.3d 934, 937 (9th Cir. 2008). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

### A. Affirmative Defenses

Defendant's Amended Answer (Dkt. No. 31) presents seven affirmative defenses: (1) laches; (2) waiver, acquiescence, and estoppel; (3) unclean hands; (4) failure to mitigate damages; (5) duplicativeness; (6) fraud; and (7) constitutional/statutory bars to any award of punitive damages. Plaintiff moves to strike the first three affirmative defenses as insufficiently pled. Plaintiff also moves to strike the sixth as failing to meet the heightened pleading standard for allegations of fraud under Fed. R. Civ. P. 9(b).

As a preliminary matter, it is not yet clear in the Ninth Circuit whether the pleading requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) apply to affirmative defenses as well as claims and counterclaims. As the Court noted in its previous order, federal district courts have frequently concluded that defendants must allege enough facts to state an affirmative defense that is plausible on its face. (Dkt. No. 29 at 8-9.) On the other hand, with the exception of an affirmative defense of fraud, which must be pled under the stricter standards of Fed. R. Civ. P. 9(b), affirmative defenses need not be presented in fine-grained detail. The Court simply seeks to avoid the use of "boilerplate" defenses: a "series of conclusory statements asserting the existence of an

4

affirmative defense without stating a reason why that affirmative defense might exist." Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010).

**1.   Laches**

Defendant alleges that the marks were the subject of "correspondence" between the companies from the 1990's to the present. "At no time did Plaintiff take any action against JHS regarding the alleged infringement." (Am. Answer ¶¶ 67-71.) Defendant also refers to a "Prior Action" between the parties in which Plaintiff did not raise these claims.[1]  (Id. at ¶¶ 72-73.) Thus, argues Defendant, Plaintiff has unreasonably delayed litigation, and the doctrine of laches should bar Plaintiff's claims.

Laches has two elements: unreasonable delay in bringing suit, and prejudice to the defendant. Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc., 559 F.3d 985, 990 (9th Cir. 2009). Plaintiff argues that a bare allegation that there was "correspondence" about the marks two decades ago does not give rise to an inference of unreasonable delay. Reading the allegations in the light most favorable to the non-moving party, however, the Court finds that the allegation could give rise to that inference. "[C]orrespondence regarding the purported Marks," though vague, is in context presumably intended to mean correspondence *regarding infringement* of the Marks. Defendant's allegations, although minimal, tend to show that Plaintiff waited some 15-20 years to

---

[1] Dismissed, Gibson Brands Inc. v. Viacom Int'l Inc., No. CV 12-10870 DDP AJWX, 2013 WL 5940826 (C.D. Cal. Nov. 5, 2013).

take action, despite knowing of potential infringement.  That is enough to support an allegation of unreasonable delay at the pleadings stage.[2]

Plaintiff also argues that Defendant has failed to allege that it was actually prejudiced by this alleged delay.  While it would have been better practice for Defendant to describe the prejudice more overtly in its factual allegations, on these particular facts–i.e., an alleged two-decade delay combined with Defendant's use of the designs in business over that same time period–the Court finds that prejudice can be sufficiently inferred from the pleading.  Defendant will, of course, have to prove the prejudice prong by sufficient evidence at trial.

Plaintiff has alleged sufficient facts to show "why [the] affirmative defense might exist."  Barnes, 718 F. Supp. 2d at 1172. The motion to strike this defense is denied.

**2.   Waiver, Acquiescence, and Estoppel**

Defendant also argues, in a single "affirmative defense," that Plaintiff has waived its claims, acquiesced to Defendant's use, or is otherwise estopped from making infringement claims as to the SG Body Design mark.

Waiver is "the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."

---

[2]That Plaintiff did not bring these claims in a 2012 action, however, does *not* support an allegation of unreasonable delay.  A plaintiff is not required to join all possible claims against a defendant into a single action. Leimer v. Woods, 196 F.2d 828, 833 (8th Cir. 1952) ("[A] joinder of causes of action in federal practice has its source in Rule 18(a) . . . which permits and encourages the practice but does not compel it.").  The relevant inquiry is not whether Plaintiff could have joined these claims in some earlier action; it is whether Plaintiff should have brought these claims in *some* action earlier than it did.

6

adidas-Am., Inc. v. Payless Shoesource, Inc., 546 F. Supp. 2d 1029, 1074 (D. Or. 2008). Defendant alleges that Plaintiff intentionally relinquished its right to an infringement claim when it represented to Defendant in the 1990's that its guitars "were not substantially similar to the SG Body Design® Trademark." (Am. Answer ¶¶ 75-77.) At the pleadings stage, this will suffice to allege the defense of waiver.[3]

To assert acquiescence, Defendant must plead the elements of laches and must further claim that "the senior user [of the mark] actively represented that it would not assert a right or a claim." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 989 (9th Cir. 2010). Defendant essentially alleges that Plaintiff actively represented that it would not assert a right to an infringement claim regarding the SG Body Design® Trademark. At the pleadings stage, this will suffice to allege the defense of aquiescence.

Finally, Defendant's Amended Answer also asserts "estoppel" as part of the same affirmative defense. A defense of equitable estoppel in the trademark context requires allegations that (1) Plaintiff knew Defendant was infringing, (2) Plaintiff's actions led Defendant to believe Plaintiff would not attempt to enforce the trademark against Defendant, (3) Defendant did not know that Plaintiff actually objected to the use of the design, and (4) Defendant relied on Plaintiff's actions to its detriment. adidas-Am., 546 F. Supp. 2d at 1075. Here, Defendant alleges that

---

[3] Defendant also alleges that Plaintiff waived its rights when it did not include the guitars in a separate 2012 action. (Am. Answer ¶ 78.) But per note 2, *supra*, Plaintiff was not required to assert its claims regarding these marks in that prior action.

7

Plaintiff told it that its designs were "not substantially similar" to Plaintiff's mark on the SG Body Design.  Such a communication serves to satisfy the first three prongs, because it tends to show that (1) Plaintiff examined Defendant's designs and so knew or should have known of any infringement, (2) Plaintiff affirmatively indicated that it did not have a basis for enforcement, and (3) Defendant had good reason to believe that Plaintiff did not object to its use of the design.  Defendant alleges reliance, (Am. Answer ¶ 77), and as above with regard to laches, the Court finds that prejudice can be sufficiently inferred from these factual allegations. Therefore, Defendant has pled sufficient facts to sustain a defense of estoppel.

Thus, Defendant has adequately pled waiver, acquiescence, and estoppel regarding the SG Body Design mark.  The motion to strike is denied as to these defenses.

**3.   Unclean Hands**

Defendant next asserts "unclean hands" as an affirmative defense.  "To make out an unclean hands defense, a trademark defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims."  <u>Japan Telecom, Inc. v. Japan Telecom Am. Inc.</u>, 287 F.3d 866, 870 (9th Cir. 2002) (internal quotation marks omitted). Usually, this defense would involve the assertion that "plaintiff used the trademark to deceive consumers."  <u>Id.</u>  Defendant makes no such assertion.

Instead, Defendant's Amended Answer argues that Plaintiff has behaved inequitably in two ways.  First, Defendant argues that Plaintiff's suit is solely an attempt to negotiate a better

8

settlement in a prior action regarding a ukulele. (Am. Answer ¶ 81.) Second, Defendant argues that "Plaintiff has made material misrepresentations to the Court," apparently because Plaintiff asserts ownership over marks other than the Flying V Peghead Design. (Id. at 82-83.)

As to the first point, it is a bare assertion, unsupported by any facts, or even a clear theory of wrongdoing. In particular, Defendant does not explain how a complaint filed in January 2014 would have exerted pressure on Defendant to settle a case dismissed with prejudice in November of 2013. Even assuming that the case remains alive in the form of an appeal to the Ninth Circuit, (Dkt. No. 72), Defendant has alleged no facts tending to show that this suit is purely vexatious, rather than just serial litigation on different trademarks. Plaintiff appears to have a non-frivolous claim to ownership of the marks and a non-frivolous claim of infringement. Even if Defendant ultimately prevails, Plaintiff's litigation is not clearly an abuse of the court system or otherwise inequitable.

As to the second point, Plaintiff's assertion of ownership in the marks is not a "material misrepresentation to the Court." It is, rather, a disputed factual premise of the litigation. If Plaintiff does not in fact own the marks, the litigation ends, rendering the unclean hands defense unnecessary.[4]

In its Opposition, Defendant further argues that Plaintiff made a material misrepresentation to the Court when it asserted in

---

[4]Whether Plaintiff is the true owner of the marks is a matter that will presumably become more clear when Bank of America provides its response to the Third Party Complaint. See Part III.C., infra.

9

its motion that a lien on the marks had been released by Bank of America. (Opp'n at 6-7.)

What Plaintiff said to the Court was that "Bank of America had a secured interest in the Gibson Marks, but was never an **owner** of the Gibson Marks . . . . Bank of America has released that security interest." (Mem. P. & A. Supp. Pl.'s Mot. at 24 (emphasis in original).) The parties agree that the latter statement is true inasmuch as it refers to the security agreement between Bank of America and Gibson Brands that began on March 25, 2011, and was terminated on July 31, 2013. (Decl. Brent Davis, Exs. B-D; Decl. Kurt Schuettinger, Ex. 1.)

Defendant argues that Plaintiff's statements, even if true, are "misleading at best," (Opp'n at 6:3), because there was another security agreement involving Bank of America and Wells Fargo, executed on July 31, 2013, which does not appear to have been released. (Decl. Brent Davis, Exs. B-D; Decl. Kurt Schuettinger, Ex. 1.) But disputed facts that are "irrelevant or unnecessary" are not material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The statement that some security interest was released was unnecessary to Plaintiff's primary legal point, which was that a mere security interest in the mark did not make Bank of America the legal *owner* of the mark. Thus, even if the representation was misleading, it was not material, and so Defendant is not entitled to an equitable defense of unclean hands.

The motion to strike is granted as to this defense.

**4. Fraud on the USPTO**

Defendant asserts a defense of fraud, alleging that "Plaintiff's actions . . . amounted to a fraud on the United States

10

Patent & Trademark Office ["USPTO"] during the prosecution of the applications that matured into the registrations of the asserted Marks." (Am. Answer ¶ 87.) The substance of this alleged fraud is that Plaintiff represented to the USPTO that "no other person, firm, corporation, or association has the right to use" the Marks and that Plaintiff had "substantially exclusive" use of the Marks, "despite Plaintiff's knowledge of rampant third-party usage." (Id.)

"[A] charge of fraud in the procurement of a trademark registration is a disfavored defense . . . ." eCash Technologies, Inc. v. Guagliardo, 127 F. Supp. 2d 1069, 1079 (C.D. Cal. 2000). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To assert an affirmative defense based on fraudulent procurement of the trademark, therefore, Defendant must plead quite specific facts showing that

> (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) *the other user had legal rights superior to applicant's*; (3) *applicant knew that the other user had rights in the mark superior to applicant's*, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and that (4) applicant, in failing to disclose these facts to the Patent and Trademark Office, *intended to procure a registration to which it was not entitled*.

Hana Fin., Inc. v. Hana Bank, 500 F. Supp. 2d 1228, 1234 (C.D. Cal. 2007) (quoting Intellimedia Sports Inc. v. Intellimedia Corp., 43

11

U.S.P.Q.2d 1203, 1206 (Trademark Tr. & App. Bd.1997)) (emphasis added).

Defendant has alleged that there were other uses of the mark at the time that the oath was signed. However, Defendant nowhere alleges that the other users had a right *superior* to Plaintiff's right, let alone that Plaintiff knew of such a right and failed to mention it to the USPTO in order to procure a registration to which Plaintiff was not entitled. In short, Defendant has not properly pled the elements of an affirmative defense based on fraud on the USPTO.

The motion to strike is granted as to this defense.

**B. Counterclaims**

Apart from its affirmative defenses, Defendant brings six counterclaims requesting cancellation of each of the marks at issue. Defendant alleges that the marks have become "generic"–that is, the designs are no longer associated with Gibson as a producer in the minds of guitar buyers, but with electric guitar products generally. Additionally, Defendant alleges that Plaintiff "made knowingly false material representations" to the USPTO on its trademark applications. (Am. Counterclaim, passim.)

As to the allegations of fraud on the USPTO, they are not sufficiently pleaded here for precisely the same reasons they were not sufficiently pleaded in fraud defense in the Amended Answer, see Part III.A.4., supra.

As to the allegation of genericness, the parties agree that genericness is a valid ground for cancellation. Registered marks like Plaintiff's become "incontestable" after five years' continuous use, 15 U.S.C. § 1065, meaning that the registration

itself is "conclusive evidence of the validity of the registered mark." 15 U.S.C. § 1115. However, even incontestable marks may be cancelled if they are or become generic. Id.; 15 U.S.C. § 1064(3).[5]

Defendant has alleged that numerous other companies have been using the trademarked designs for decades (generally, from the 1960s onward), that those companies are not Plaintiff's licensees or subsidiaries, that "advertising and sales of third-party guitars bearing [designs] that are identical, or substantially similar to, the [marks] equal or exceed the advertising and sales of Gibson guitars bearing [the marks]," and that the marks "do[] not function as source identifier[s]." (Am. Counterclaim, passim.)

Plaintiff argues that these allegations do not suffice to survive even at the pleadings stage, where a party is required to "to give fair notice" and to "plausibly suggest an entitlement to relief." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

As to the first prong under Starr, Plaintiff argues that the Amended Counterclaim does not give it fair notice of the grounds of the counterclaims, because Defendant "does not provide model designations or pictures of these supposedly infringing guitars." (Mem. P. & A. Supp. Mot. Dismiss at 20:22-24.) Of course Plaintiff is correct that to argue genericness of the marks Defendant will, at some point, have to identify specific models of guitars and show

---

[5] Section 1064(3) allows cancellation "[a]t any time if the registered mark becomes the generic name for the goods or services." The term "generic name" is understood to encompass "names, words, symbols, devices or trade dress." Sunrise Jewelry Mfg. Corp. v. Fred S.A., 175 F.3d 1322 (Fed.Cir. 1999).

13

that their designs are identical or nearly identical to Plaintiff's.

    At the pleadings stage, however, a party need not provide "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To give the opposing party fair notice, the party need only produce "a short and plain statement . . . of what the claim is and the grounds upon which it rests." Id. (internal quotation marks and ellipsis omitted). Defendant has alleged with specificity which companies have used Plaintiff's marks and during what time periods the alleged infringement occurred–information that provides sufficient notice of the grounds on which its counterclaims rest. Moreover, those two pieces of information were exactly the ones this Court indicated in its previous order that Defendant needed to provide.[6] To now require design sketches or model numbers for each of the allegedly infringing guitars would seem to be moving the goalposts on Defendant. The Court finds that Defendant's Amended Counterclaim provides Plaintiff with fair notice of the basis of the counterclaims.

    As to the second Starr prong, Plaintiff argues that Defendant does not state adequate grounds for relief because the Amended Counterclaim "never even mentions the public perception of the Gibson Marks." (Mem. P. & A. Supp. Mot. Dismiss at 21:8-9.)

---

[6] See Order of Aug. 22, 2014 (Dkt. No. 29): "Defendant does not, however, name any of the 'countless other manufacturers' who have manufactured or sold guitars with 'identical or substantially similar' body designs. As Plaintiff points out, these 'other manufacturers' could be Gibson licensees or subsidiaries, which would defeat Defendant's assertion that the marks have attained 'generic' status. Nor does Defendant specify the time period or 'decades' during which the purported similar guitars were 'manufactured and sold.' This information is necessary to state a plausible claim for a generic mark . . . ."

14

1  Defendant states with regard to each counterclaim, however, that
2  the mark "does not function as a source identifier." (E.g., Am.
3  Counterclaim ¶ 16.)  Although this is a very minimal allegation and
4  veers close to being a conclusory statement of law, it does allege
5  a fact about the public's state of mind with regard to the mark.
6  "Source identifier" means that the mark "assures a potential
7  customer that *this* item . . . is made by the same producer as other
8  similarly marked products." Au-Tomotive Gold, Inc. v. Volkswagen
9  of Am., Inc., 457 F.3d 1062, 1067 (9th Cir. 2006).  Defendant's
10 allegation, then, is that the public does not use the mark to
11 identify Plaintiff as the producer of the marked guitars.  This
12 suffices to state a ground for cancellation.  "[T]he trademark is
13 invalid unless source identification is its primary significance."
14 Anti-Monopoly, Inc. v. Gen. Mills Fun Grp., 611 F.2d 296, 302 (9th
15 Cir. 1979).

**C.   Third Party Complaint**

Plaintiff's Motion requests dismissal of Defendant's Third Party Complaint against Bank of America.  The thrust of the Third Party Complaint is that Defendant believes that five of the six marks at issue belong to Bank of America, not Plaintiff.  Although both parties have presented arguments touching on this issue, Bank of America has not yet had adequate time to respond.  As the Court finds it appropriate to wait until the third-party defendant has had a chance to respond before reaching the merits of the Third Party Complaint, the Court denies the motion to dismiss.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's third and sixth affirmative defenses are stricken from the Amended Answer.

15

Defendant is granted leave to amend the Amended Answer in order to repair the deficiencies in the sixth affirmative defense (fraud) only; such amendment shall be filed no later than ten days from the date of this order.  Defendant's six counterclaims are dismissed without prejudice inasmuch as they are based on allegations of fraud on the USPTO, but the motion is denied inasmuch as the counterclaims are based on allegations of genericness of the marks. The motion to dismiss the Third Party Complaint is denied without prejudice in order to provide Bank of America time to respond.

IT IS SO ORDERED.

Dated: October 23, 2014

DEAN D. PREGERSON
United States District Judge