John K. Buche (Bar No. 239477)
jbuche@buchelaw.com
Lindsay D. Molnar (Bar No. 275156)
lmolnar@buchelaw.com
BUCHE AND ASSOCIATES, P.C.
9100 Wilshire Blvd., Suite 445E
Beverly Hills, CA 90212
(310) 459-9120
(858) 459–9120 fax

Brent M. Davis (*Pro Hac Vice*)
bdavis@musicesq.com
Ronald S. Bienstock (*Pro Hac Vice*)
rbienstock@musicesq.com
BIENSTOCK & MICHAEL, P.C.
411 Hackensack Ave.
Hackensack, NJ 07601
(201) 525–0300
(201) 525–0133 fax

Attorneys for Defendant
JOHN HORNBY SKEWES & CO. LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

|  |  |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>            Plaintiff,<br>        v.<br><br>JOHN HORNBY SKEWES & CO. LTD., a United Kingdom Corporation; and DOES 1 through 10,<br><br>          Defendants. | Case No.  CV 2:14-00609-DDP-SS<br><br>Hon. Dean D. Pregerson<br><br>**JOHN HORNBY SKEWES & CO. LTD.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: January 12, 2015<br>Time: 10:00 a.m.<br>Courtroom: 3<br>Complaint filed:  January 27, 2014 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on January 12, 2015, at 10:00 a.m., or as soon thereafter as this matter can be heard before the Honorable Dean D. Pregerson of the United States District Court for the Central District of California, at 312 N. Spring Street, Courtroom 3, Los Angeles, CA, 90012, Defendant John Hornby Skewes and Co. Ltd. ("JHS") will move and hereby move for leave to amend JHS' counterclaims to reflect the recent determination that Bank of America is not the owner of four of the asserted trademarks.

Counsel conducted an in person meet and confer pursuant to L.R. 7-3 on December 8, 2014, with additional attempts to resolve the issue without the need for motion practice made by counsel for JHS on December 10 and 15, 2014.

This motion is based on the attached memorandum of points and authorities in support thereof, the declaration of Brent M. Davis in support thereof, and all files and pleadings in this action.

Dated: December 15, 2014          BUCHE AND ASSOCIATES, P.C.

By: */s/ John K. Buche*_____
    John K. Buche (Bar No. 239477)
    Lindsay D. Molnar (Bar No. 275156)

    BIENSTOCK & MICHAEL, LLC
    Brent M. Davis (*Pro Hac Vice*)
    Ronald S. Bienstock (*Pro Hac Vice*)

Attorneys for Defendant
JOHN HORNBY SKEWES & CO. LTD.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

In this motion, Defendant John Hornby Skewes & Co. Ltd. ("JHS") seeks leave of Court to file a Second Amended Complaint ("SAC") for the purpose of reflecting the recent determination of ownership of four of the asserted trademarks in this action and to remove the fraud based claims as struck by the Court in its order dated October 23, 2014.  A copy of the proposed SAC is attached hereto as Exhibit A.

Good cause exists to grant this motion under the extremely liberal standards of Rule 15(a). See Fed. R. Civ. P. 15(a)(2) (stating that leave to amend "shall be freely given when justice so requires"); see also Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

Other factors considered by courts in evaluating motions to amend under Rule 15(a) similarly militate in favor of permitting amendment here. JHS has acted responsibly and in good faith in its reliance on records of the United States Patent and Trademark Office ("USPTO") regarding the ownership of the asserted trademarks.  Further, counsel for JHS asked counsel for Gibson Brands, Inc. ("Gibson") at the oral argument held on December 8, 2014 if Gibson would consent to this amendment.  Gibson's counsel replied that he would discuss the issue with his client and advise.  Counsel for JHS attempted to contact counsel for Gibson on this

1

issue again on December 10 and 15, 2014.  Counsel for Gibson finally responded at 3:20 PM EST that Gibson was unwilling stipulate to the amendment.

Further, Gibson cannot credibly claim any unfair prejudice as a result of the proposed amendment. Gibson has been on notice that JHS seeks to cancel the asserted trademarks since JHS filed its original counterclaims on May 30, 2014. Discovery is still at an early stage in this case, and the proposed amendment has been brought within the time period set by the Court for amending the pleadings.  Further, Gibson has yet to answer any previously filed counterclaims.

Accordingly, JHS respectfully submits that, pursuant to Rule 15(a)(2), the Court grant the instant motion to amend.

## II. PROCEDURAL BACKGROUND

Gibson filed its complaint against JHS in this action on January 27, 2014 [Dkt. No. 1].  The complaint alleged that JHS committed trademark infringement of six trademark registrations.  JHS filed a motion to transfer on April 1, 2014 [Dkt. No. 9], which was denied on May 28, 2014[Dkt. No. 16].  JHS filed its Answer and Counterclaims on May 30, 2014 [Dkt. No. 19].  The counterclaims sought cancellation of the six asserted trademarks on the grounds of genericism and fraud. Gibson filed a motion to dismiss on June 20. 2014 [Dkt. No. 25], which was granted on August 22, 2014, but gave JHS leave to amend [Dkt. No. 29].  JHS filed its First Amended Answer [Dkt. No. 31] and its First Amended Counterclaims and Third Party Complaint [Dkt. No. 30] on September 5, 2014.  The First Amended

MOTION TO AMEND

Counterclaims and Third Party Complaint again sought cancellation of the six asserted trademarks on the grounds of genericism and fraud, but added Bank of America ("BOA") as a third party defendant because USPTO records indicated that BOA owned four of the asserted trademarks.  Gibson filed a motion to dismiss on September 19, 2014 [Dkt. No. 46].  That motion was granted in part and denied in part on October 23, 2014 [Dkt. No. 57], dismissing various affirmative defenses and the fraud basis for cancellation of the asserted trademarks.

BOA filed a motion to dismiss the Third Party Complaint on October 24, 2014 [Dkt. No. 58].  Gibson filed a renewed motion to dismiss the Third Party Complaint on November 7, 2014 [Dkt. No. 59].  In these motions, both Gibson and BOA made factual representations to the Court that Gibson was the owner of the four trademark registrations at issue.  Oral argument on the two motions was held on December 8, 2014 [Dkt. No. 66].  Later that day, the Court issued its order dismissing the Third Party Complaint [Dkt. No. 67].

At the conclusion of the argument, counsel for JHS met and conferred with counsel for Gibson.  Declaration of Brent M. Davis ("Davis Decl.") at ¶ 3.  Counsel for JHS asked counsel for Gibson that in the event the Court granted the pending motions, if Gibson would be willing to stipulate to JHS filing a second amended counterclaims reflecting Gibson's ownership of all six registrations.  Id. at ¶ 4.  Gibson's counsel responded that he would confer with Gibson and advise.  Id. at ¶ 5.

In a further attempt to resolve this issue without the need for motion practice, Counsel for JHS sent an email to counsel for Gibson on December 10, 2014, a copy of which is attached to the <u>Davis Decl</u>. as <u>Exhibit B</u>.  Having received no communication from Gibson's counsel since the in person meet and confer and no response to the December 10 email, counsel for JHS sent one last email in an attempt to avoid motion practice at 10:51 AM on December 15, 2014, a copy of which is attached to the <u>Davis Decl</u>. as <u>Exhibit C</u>.  At 3:20 PM, counsel for Gibson finally responded by email, a copy of which is attached to the <u>Davis Decl</u>. as <u>Exhibit D</u>, in which counsel advised that Gibson was unwilling to stipulate to the Second Amended Counterclaims.

## III. JHS' PROPOSED AMENDMENT MEETS
## THE REQUIREMENTS OF RULE 15

JHS seeks leave to amend its counterclaims simply to reflect Gibson's ownership in all six asserted trademark registrations and to delete allegations of fraud that were struck by the Court.  <u>Fed. R. Civ. P 15(a)</u> sets a liberal standard for amendment.  Rule 15(a)(2) states that such "leave shall be freely given when justice so requires." This policy is "to be applied with extreme liberality." <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001) (quoting <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990)).

Courts generally consider four factors when evaluating a plaintiff's request to amend a pleading: (1) bad faith or dilatory motive; (2) undue delay; (3) prejudice to

MOTION TO AMEND

the opposing party; and (4) futility of the proposed amendment.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 194 F.3d 980, 986 (9th Cir. 1999).  Each of these four factors support JHS' request for leave to amend.

    • JHS has shown its good faith. From the filing of its first responsive pleading, JHS has sought cancellation of the six asserted trademark registrations.  The only need for the proposed amendment is because JHS relied in good faith on USPTO records regarding ownership of the asserted registrations.

    • JHS' amendment is timely. JHS brings this motion seven days after the Court has dismissed BOA and the Third Party Complaint.  JHS met and conferred with counsel for Gibson at the oral argument knowing that the deadline to amend pleadings was just a week away.  JHS brings this motion before the deadline to amend pleadings as set by the Court.

    • JHS' amendment will not prejudice Gibson. This case is at a very early stage of discovery. Gibson has propounded discovery requests on the genericism claims raised in the SAC.  No depositions have been conducted and no discovery need be repeated.  Further, Gibson has yet to answer any previously filed counterclaims. Accordingly, Gibson cannot identify any prejudice from JHS' amendment.

    • JHS' amendment alleges a proper claim. Gibson cannot meet the very high burden of showing futility of JHS' amendment as it uses the exact same language the Court has already held states a plausible claim for relief.  <u>See</u> <u>Dkt. No. 46</u> at 12-15.

MOTION TO AMEND

## A. <u>JHS Acted In Good Faith And Has Timely Moved To Amend</u>

The factors of "good faith" and "undue delay" substantially overlap. <u>See</u>, e.g., <u>Wright & Miller, Federal Practice and Procedure, § 1487</u> ("When the court inquires into the good faith of the moving party, it typically will take account of the movant's delay in seeking the amendment."). Courts also consider whether the proposed amendment is interposed for some improper purpose, such as to affect the Court's jurisdiction or for reasons of litigation tactics. <u>See</u> <u>Id</u>. (if the Court "determines that the amendment was asserted in bad faith, as, for example, when plaintiff attempts to destroy the federal court's removal jurisdiction over the case by altering the complaint so that the case will be remanded, the court may not allow the amendment"). Here, Gibson cannot make any showing that JHS has acted in anything but good faith in pursuing this amendment. JHS' proposed amendment will not affect this Court's jurisdiction over this matter, nor does JHS seek some tactical advantage through amendment.  JHS simply seeks to clarify its counterclaims and avoid confusion by removing the fraud allegations dismissed by the Court and asserting the proper owner of the registrations based upon representations made by both Gibson and BOA.

Accordingly, it is plain that JHS has acted with good faith and has not unduly delayed the instant motion to amend.

//

//

B. **JHS' Amendment Will Not Prejudice Gibson**

Gibson bears the burden of establishing that prejudice will result from JHS' amendment. See <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).  Gibson cannot possibly make such a showing. As noted previously, Gibson has been on notice that JHS seeks cancellation of the asserted trademarks since May 30, 2014.  No depositions have yet been conducted. Fact discovery remains open until October 2015 and Gibson has already propounded discovery requests regarding the claims of genericism.  *Further, Gibson has yet to answer any previously filed counterclaims.* Given the early stage of the case, Gibson can point to no unfair prejudice that will result from the Court's granting of the instant motion. See <u>ABM Indus., Inc. v. Zurich Am. Ins. Co.</u>, 237 F.R.D. 225, 227 (N.D. Cal. 2006) (holding that defendants were not prejudiced by amendment because litigation was at an early stage, and defendants were not surprised by the new factual allegations).

Accordingly, Gibson will not be prejudiced by amendment.

C. **JHS' Proposed Amendment States Valid Claims**

The final factor considered by Courts under Federal Rule 15 is futility of the proposed amendment. Where, as here, the amended pleading alleges a legally sufficient claim for relief, leave to amend should be granted. See <u>Miller v. Rvkoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988).  As stated above, the SAC simply removes the allegations relating to fraud that were dismissed by the Court and clarifies the ownership of the asserted trademarks based upon the representations

MOTION TO AMEND

made by both Gibson and BOA.  No other changes have been made.  As this Court has already held, this exact language states a plausible claim for cancellation on the grounds of abandonment.  Accordingly, the SAC states a valid claim.

## IV. CONCLUSION

For the foregoing reasons, JHS respectfully requests that the Court grant the instant motion to amend.


Dated:  December 15, 2014          BUCHE AND ASSOCIATES, P.C.

By: */s/ John K. Buche*
John K. Buche (Bar No. 239477)
Lindsay D. Molnar (Bar. No. 275156)

BIENSTOCK & MICHAEL, LLC
Brent M. Davis (*Pro Hac Vice*)
Ronald S. Bienstock (*Pro Hac Vice*)

Attorneys for Defendant
JOHN HORNBY SKEWES & CO. LTD.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copies of **JOHN HORNBY SKEWES & CO. LTD.'S MOTION TO AMEND AND EXHIBITS IN SUPPORT; DECLARATION OF BRENT M. DAVIS AND EXHIBITS THERETO; AND PROPOSED ORDER,** have been served on this date to all counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per L.R. 5-3.2. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery upon their appearance in this matter.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 15th day of December, 2014 at Los Angeles, California.

Date:   December 15, 2014

By: */s/ Lindsay D. Molnar*
Lindsay D. Molnar

MOTION TO AMEND

9

**EXHIBIT A**

John K. Buche (Bar No. 239477)
Lindsay D. Molnar (Bar. No. 275156)
BUCHE AND ASSOCIATES, P.C.
9100 Wilshire Blvd., Suite 445 East Tower
Beverly Hills, California 90212
(310) 459-9120
(858) 459–9120 fax
jbuche@buchelaw.com

Brent M. Davis (*Pro Hac Vice*)
Ronald S. Bienstock (*Pro Hac Vice*)
BIENSTOCK & MICHAEL, LLC
Continental Plaza
411 Hackensack Ave., 7th Floor
Hackensack, NJ 07601
(201) 525–0300
(201) 525–0133 fax
rbienstock@musicesq.com
bdavis@musicesq.com

Attorneys for Defendant
JOHN HORNBY SKEWES & CO. LTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

GIBSON BRANDS, INC., a Delaware
corporation,

        Plaintiff,

        v.

JOHN HORNBY SKEWES & CO. LTD., a
United Kingdom Corporation; and DOES 1
through 10,

        Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  CV 2:14-00609-DDP-SS

Hon. Dean D. Pregerson

**DEFENDANT JOHN HORNBY
SKEWES & CO. LTD.'S**

**SECOND AMENDED
COUNTERCLAIMS**

Complaint filed:

January 27, 2014

John Hornby Skewes & Co. LTD. ("Counterclaimant" or "JHS"), by and through its attorneys Buche and Associates, P.C., and Bienstock & Michael, P.C., sets forth the following second amended counterclaims against Gibson Brands, Inc. ("Gibson" or "Counterdefendant"), and respectfully alleges as follows:

## The Parties

1.      JHS is an United Kingdom corporation with a principal place of business at Salem House, Parkinson Approach, Garforth, Leeds 16 LS25 2HR, United Kingdom.

2.      Gibson is a Delaware Corporation with a principal place of business at 309 Plus Park Boulevard, Nashville, Tennessee 37217.

## Jurisdiction

3.      Jurisdiction of this Court is based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1338(a) and (b) (Acts of Congress relating to trademarks and related actions), Sections 39 and 43(0) and (c) of the United States Trademark Act of 1946 ("Lanham Act"), as amended (15 U.S.C. §1121 and 1125(a)(c)).

4.      This Court has personal jurisdiction over Gibson because it has purposefully availed itself by filing the Complaint in this District.  Also, Gibson maintains continuous and systematic contacts with the forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

## FIRST COUNTERLCLAIM
## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,215,791

5.      Gibson is the owner of U.S. Trademark Registration No. 2,215,791 (the "791 Registration") for the two-dimensional body shape for an electric guitar (the "'791 Body Shape").

6.      In or around 1961, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '791 Body Shape under the model designation "Les Paul."

2

7.      Shortly thereafter, and continuing through the 1960's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Domino, Gretsch, Guild, Hagstrom, Kay, Magnatone, Micro-Frets, Ovation, Sekova, Standel, Tele-Star and Vox.

8.      In or around 1963, Gibson switched the model designation of the guitar bearing the '791 Body Shape to the "SG."

9.      In the 1970's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Alembic, Ampeg, Electra, Godwin, Guild, Ibanez, Indy, Jaydee, Madeira, Micro-Frets, National, Ventura, Welson and Yamaha.

10.     In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Alembic, Agile, Aria, Bond, Burny, Ed Clark, Edwards, GmP, Greco, Guild, Hohner, Jaydee, Samick, Skylark, Tokai, Vantage, Westbury and Yahama.

11.     Since the 1990's to the present day, more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '791 Body Shape, including, but not limited to, Aria, Arbor, Austin, Black Label, DBZ, De Armond, Dean, Ed Clark, Electrical Guitar Company, Eric Joseph Electric Guitars, ESP, Fender, First Act, Guild, Hohner, Ibanez, Jay Turser, Jaydee, Kaman, LTD, Pathmaker, Peavey, Reverend, Robin, Rock N Roll Relics, Samick, Schecter, Stagg, Tokai, Vox, Warwick, Washburn and Yamaha.

12.     Upon information and belief, none of these third parties are subsidiaries

1   of Gibson or licensed the '791 Body Shape from Gibson.

2       13.    Upon information and belief, advertising and sales of third-party guitars

3   bearing body shapes that are identical, or substantially similar to, the '791 Body

4   Shape equal or exceed the advertising and sales of Gibson guitars bearing the the

5   '791 Body Shape.

6       14.    As a result of the foregoing widespread and rampant use by third-

7   parties, the '791 Body Shape is a generic electric guitar body shape and does not

8   function as a source identifier.

9       15.    Allowing Plaintiff trademark protection, and exclusive use, for the

10  generic '791 Body Shape puts Counterclaimant, and all other guitar manufacturers, at

11  a non-reputational disadvantage.

12      16.    Allowing continued registration of the generic '791 Body Shape

13  interferes with Counterclaimant's ability to advertise and creates unfair competition.

14                      **SECOND COUNTERCLAIM**

15  **CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,053,805**

16      17.    Gibson is the owner of U.S. Trademark Registration No. 2,053,805 (the

17  "'805 Registration") for the two-dimensional body shape for an electric guitar (the

18  "'805 Body Shape").

19      18.    In or around 1958, Gibson began manufacturing, advertising, marketing

20  and selling electric guitars incorporating the '805 Body Shape under the model

21  designation "Explorer."

22      19.    Since the Explorer proved to be unsuccessful, Gibson ceased production

23  of the Explorer in 1963.

24      20.    Upon information and belief, an extremely small number of guitars

25  incorporating the '805 Body Shape were manufactured.

26      21.    In 1974, Hamer, a U.S. guitar company, began manufacturing,

27  advertising, marketing and selling guitars, in the United States, incorporating the

28  '805 Body Shape.

4

22.     Rick Nielsen, guitarist for the band Cheap Trick, began playing Hamer guitars incorporating the '805 Body Shape upon their introduction into the marketplace and these Hamer guitars were featured prominently on Cheap Trick's album art.

23.     In 1976, Music Man began running an advertisement for its amplifiers featuring Eric Clapton playing a guitar bearing a body shape identical, or substantially similar to, the '805 Body Shape.

24.     Following Hamer's lead and, in an attempt to capitalize on the public's interest in the '805 Body Shape because of the Eric Clapton/Music Man advertisement, Gibson began manufacturing guitars incorporating the '805 Body Shape again in 1976.

25.     Shortly thereafter, and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '805 Body Shape, including, but not limited to, Aria, Dean, Electra, Ibanez, Memphis, Music Man, PRS and Rhyne.

26.     In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '805 Body Shape, including, but not limited to, Alembic, Arbor, Aria, BC Rich, Charvel, Dean, Electra, Hamer, Ibanez, Moonstone, PRS and Tokai.

27.     Since the 1990's to the present day, more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '805 Body Shape, including, but not limited to, Aria, Charvel, Dean, ESP, Hamer, Ibanez, Jackson, LTD, Pangborn, Peavey, Samick and Slammer.

28.     Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '805 Body Shape from Gibson.

29.     Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '805 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the the '805 Body Shape.

30.     As a result of the foregoing rampant use by third-parties, the '805 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

31.     Allowing Plaintiff trademark protection, and exclusive use, for the generic '805 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

32.     Allowing continued registration of the generic '805 Body Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

### THIRD COUNTERCLAIM

### CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,007,277

33.     Gibson is the owner of U.S. Trademark Registration No. 2,007,277 on the Supplemental Register (the "'277 Registration") for the two-dimensional body shape for an electric guitar (the "'277 Body Shape").

34.     In 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '277 Body Shape under the model designation "ES-335"

35.     The '277 Body Shape was, and is, extremely similar to many other two-dimension body shapes.

36.     Shortly thereafter, and continuing throughout the 1960's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Aria, Baldwin, Coral, Custom Kraft, Danelectro, Fender, Framus, Gretsch, Guild, Guitorgan, Hagstrom, Harmony, Hofner, Hohner, Ibanez, Kay, Micro-Frets, Mosrite,

National, Oahu, Ovation, St. Moritz, Standel, Strum & Drum, Supro, Teisco, Univox and Vox.

37.   In the 1970's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Acoustic, Aria, BC Kingston, Danelectro, Fender, Framus, Gretsch, Guild, Guitorgan, Hagstrom, Harmony, Hofner, Hohner, Ibanez, Kramer,[1] Micro-Frets, Mosrite, National, Ovation, Pearl, Standel, Travis Bean, Univox and Vox.

38.   In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Antoria, Aria, Benedetto Guitars, Conn-Selmer, Daion, Danelectro, Fender, Fernandes, Gretsch, Guild, Hagstrom, Heritage, Hofner, Hondo, Ibanez, Kramer, LAG, Moonstone, Ovation, Peavey, Teisco, Tom Holmes, Travis Bean, Valencia and Yamaha.

39.   Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '277 Body Shape, including, but not limited to, Agile, Anderberg, Aria, Artinger, Austin, AXL, Badwater, BiLT Guitar, Black Label, Bolin, Brian Kingston, Brian May, Burly, Canvas, Carruthers, Carvin, Cobra, Collings, Crafter, Daisy Rock, Danelectro, D'Angelico, DBZ, De Armond, Delm Guitars, Devlin, DGN, Dismal, David Thomas McNaught, Duesenberg, Eastman, Eastwood, Electrical Guitar Company, ESP, Eternity Guitars, Falbo, Fender, First Act, Framus, Fritz Brothers, Fryer Guitars, Gene Baker, Giannini, Gretsch, Guild, GZ Guitars, Hagstrom, Hamer,

---

[1] Gibson did not purchase Kramer until in or around 1998.

7

Hanson, Harmony, Heritage, Highland, Hofner, Hutchins Guitars, Ibanez, Jarrett, Jay Turser, JB Player, J3, Jackson, Kasuga, Kona, LAG, Legends Guitar, M&M, Martyn Booth, McCurdy, Michael Kelly Guitars, Navigator, OLP, Oscar Schmidt, Ovation, Peavey, PRS, RC Allen, Ribbecke, Samick, Schecter, Shergold, Slick Guitars, Sparrow, Stromberg, SX, Thorn, Tony Cochran Custom, Tradition, Travis Bean, Valencia, Venture, Vox, Wal Custom, Warwick, Washburn, Wilson, Xaviere, Yamaha and Zimnicki.

40.     Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '277 Body Shape from Gibson, including Kramer at the time it adopted the '277 Body Shape.

41.     Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '277 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the '277 Body Shape.

42.     As a result of the foregoing rampant use by third-parties, the '277 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

43.     Allowing Plaintiff trademark protection, and exclusive use, for the generic '277 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

44.     Allowing continued registration of the generic '277 Body Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

**FOURTH COUNTERCLAIM**

**CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 2,051,790**

45.     Gibson is the owner of U.S. Trademark Registration No. 2,051,790 (the "'790 Registration") for the two-dimensional body shape for an electric guitar (the "'790 Body Shape").

46.     In or around 1958, Gibson began manufacturing, advertising, marketing

and selling electric guitars incorporating the '790 Body Shape under the model designation "Flying V."

47.     Because the Flying V proved to be unsuccessful, Gibson ceased production of the Flying V in 1959.

48.     Upon information and belief, an extremely small number of guitars incorporating the '790 Body Shape were manufactured.

49.     Gibson began manufacturing guitars incorporating the '790 Body Shape again in 1967.

50.     Shortly thereafter and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '790 Body Shape, including, but not limited to, Aria, Dan Erlewine Guitars, Electra and Ibanez.

51.     In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '790 Body Shape, including, but not limited to, Aria, Dan Erlewine Guitars, Dean, Hamer, Ibanez, Jackson, Kramer, Moonstone, O'Hagan, Samson, Tokai and Washburn.

52.     Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing body shapes that are identical, or substantially similar to, the '790 Body Shape, including, but not limited to, Arpeggio, Arrowhead Vee, Attila Custom Guitars, BC Rich, Blakhart, Carvin, Dan Erlewine Guitars, DBZ, Dean, DHR, Dommenget, Electrical Guitar Company, ESP, Fernandes, Floyd Rose, Framus, GmP, Hamer, Hard Knocks, Ibanez, Jackson, Jay Turser, Kramer, Mark Katzen Guitars, Oktober Guitars, Peavey, Rebel Guitars, Reverend, Samick, Sandoval, Schecter, Sozo Guitars, Stagg, Stevens Electric Instruments, Washburn, Wild West Guitars and Zemaitis.

53.     Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '790 Body Shape from Gibson, including Kramer at the time it adopted the '790 Body Shape.

54.     Upon information and belief, advertising and sales of third-party guitars bearing body shapes that are identical, or substantially similar to, the '790 Body Shape equal or exceed the advertising and sales of Gibson guitars bearing the '790 Body Shape.

55.     As a result of the foregoing rampant use by third-parties, the '790 Body Shape is a generic electric guitar body shape and does not function as a source identifier.

56.     Allowing Plaintiff trademark protection, and exclusive use, for the generic '790 Body Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

57.     Allowing continued registration of the generic '790 Body Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

## FIFTH COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 3,976,202

58.     Gibson is the owner of U.S. Trademark Registration No. 3,976,202 on the Supplemental Register (the "'202 Registration") for the three-dimensional shape for the headstock of a guitar (the "'202 Headstock Shape").[2]

59.     In or around 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '202 Headstock Shape under the model designation "Flying V."

60.     Because the Flying V proved unsuccessful, Gibson ceased production of the Flying V in 1959.

61.     Upon information and belief, an extremely small number of guitars

---

[2] While the description of the mark is for three dimensions, the drawing of the mark is only in two-dimensions.

incorporating the '202 Headstock Shape were manufactured.

62.   Gibson began manufacturing guitars incorporating the '202 Headstock Shape again in 1967.

63.   Shortly thereafter and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape, including, but not limited to, Aria, Electra, Ibanez and Rick Turner.

64.   In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape, including, but not limited to, Acacia, Alembic, Alfredo Bugari, Brian May, Carvin, Defil, Guild, Hamer, Ibanez, Karnak Isis, O'Hagan, Rockinger, Samson, Solo Guitars and Tokai.

65.   Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape, including, but not limited to, Alembic, AMG Guitars, Arpeggio, Attila Custom Guitars, Brian May, Carvin, Casper, Framus, Fryer Guitars, Fury, Guild, Hamer, Hard Knocks, Henman Guitars, Hohner, Ibanez, Jackson, Jay Turser, Larkin, Mark Katzen Guitars, Mobius, Oktober Guitars, Rick Turner, Samick, Shredneck, Steen Genesis and Stevens Electric Instruments.

66.   Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '202 Headstock Shape from Gibson.

67.   Upon information and belief, advertising and sales of third-party guitars bearing headstock shapes that are identical, or substantially similar to, the '202 Headstock Shape equal or exceed the advertising and sales of Gibson guitars bearing the '202 Headstock Shape.

68.     As a result of the foregoing rampant use by third-parties, the '202 Headstock Shape is a generic electric guitar headstock shape and does not function as a source identifier.

69.     Allowing Plaintiff trademark protection, and exclusive use, for the generic '202 Headstock Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

70.     Allowing continued registration of the generic ''202 Headstock Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

## SIXTH COUNTERCLAIM

## CANCELLATION OF U.S. TRADEMARK REGISTRATION NO. 1,567,052

71.     Gibson is the owner of U.S. Trademark Registration No. 1,567,052 (the "'052 Registration") for the two-dimensional shape for the headstock of a guitar (the "'052 Headstock Shape").

72.     In or around 1958, Gibson began manufacturing, advertising, marketing and selling electric guitars incorporating the '052 Headstock Shape under the model designation "Explorer."

73.     Gibson ceased production of the Explorer in 1963.

74.     Upon information and belief, an extremely small number of guitars incorporating the '052 Headstock Shape were manufactured.

75.     In 1974, Hamer, a U.S. guitar company, began manufacturing, advertising, marketing and selling guitars, in the United States, guitars incorporating the '052 Headstock Shape.

76.     Rick Nielsen, guitarist for the band Cheap Trick, began playing Hamer guitars incorporating the '052 Headstock Shape upon their introduction into the marketplace and these Hamer guitars were featured prominently on Cheap Trick's album art.

77.     In 1976, Music Man began running an advertisement for its amplifiers featuring Eric Clapton playing a guitar bearing a body shape identical, or

substantially similar to, the '805 Body Shape, the body shape associated with the '052 Headstock Shape.

78.   Following Hamer's lead and, in an attempt to capitalize on the public's interest in the '805 Body Shape because of the Eric Clapton/Music Man advertisement, Gibson began manufacturing guitars incorporating the ''052 Headstock Shape again in 1976.

79.   Shortly thereafter and throughout the 1970's, numerous other companies began manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape, including, but not limited to, Dean, Electra, Hamer, Ibanez, J. Frog, Kramer, Music Man, Rhyne and Roscoe.

80.   Gibson admits that Kramer was using the '052 Headstock Shape by referring to the '052 Headstock Shape in its Complaint as the "Kramer Headstock."

81.   In the 1980's, even more companies were manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape, including, but not limited to, Arbor, Carvin, Charvel, Electra, Hamer, Jackson, Kramer, Ovation, Paul Cs, Robin Guitars, Roscoe, Tokai, Washburn and Yamaha.

82.   Since the 1990's to the present day, even more companies are manufacturing, advertising, marketing and selling, in the United States, electric guitars and basses bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape, including, but not limited to, Alvarez, Aria, Charvel, ESP, Fernandes, Fury, Gary Kramer Guitar Company, Hamer, Jackson, Kramer, LAG, Ormsby Guitars, Palermo, Peavey, Roscoe and Washburn.

83.   Upon information and belief, none of these third parties are subsidiaries of Gibson or licensed the '052 Headstock Shape from Gibson.

84.   Upon information and belief, advertising and sales of third-party guitars

bearing headstock shapes that are identical, or substantially similar to, the '052 Headstock Shape equal or exceed the advertising and sales of Gibson guitars bearing the '052 Headstock Shape.

85.    As a result of the foregoing, the '052 Headstock Shape is a generic shape for the headstock of a guitar and does not function as a source identifier.

86.    Allowing Plaintiff trademark protection, and exclusive use, for the generic '052 Headstock Shape puts Counterclaimant, and all other guitar manufacturers, at a non-reputational disadvantage.

87.    Allowing continued registration of the generic '052 Headstock Shape interferes with Counterclaimant's ability to advertise and creates unfair competition.

**WHEREFORE,** Defendant and Counterclaimant and Third-Party Plaintiff JOHN HORNBY SKEWES & CO. LTD. prays for judgment as follows:

A.    Cancellation of U.S. Trademark Registration Nos. 2,215,791; 2,053,805; 2,007,277; 2,051,790; 3,976,202; and 1,567,052;

B.    That JHS be awarded costs of suit incurred herein, including attorneys' fees and expenses; and

C.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant demands trial by jury on all issues so triable.

//
//
//
//
//
//
//

14

1  Dated:  December 15, 2014                    BUCHE AND ASSOCIATES, P.C.

2
                                               By:_____
3                                                  John K. Buche (Bar No. 239477)
                                                   Lindsay D. Molnar (Bar No. 275156)
4
5                                                  BIENSTOCK & MICHAEL, LCC

6                                                  Brent M. Davis (*Pro Hac Vice*)
                                                   Ronald S. Bienstock (*Pro Hac Vice*)
7
8                                              Attorneys for Defendant
                                               JOHN HORNBY SKEWES & CO. LTD.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28