O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN HORNBY SKEWES & CO. LTD.,<br><br>    Defendant. | Case No. CV 14-00609 DDP (SSx)<br><br>**ORDER re MOTION FOR DISQUALIFICATION AND CONTINUING TRIAL DATES**<br><br>[Dkt. No. 92] |

Presently before the Court is Plaintiff Gibson Brands, Inc. ("Gibson")'s Motion for Disqualification and Other Ancillary Relief against counsel for Defendant John Hornby Skewes & Co., Ltd. ("JHS"). After considering the parties' submissions and hearing oral argument, the Court adopts the following Order.

**I.   BACKGROUND**

This trademark case has resulted in several prior Orders from this Court detailing different facets of the facts of this case. (See Dkt. Nos. 16, 29, 57, 67, 72, 88.) Essentially, Plaintiff Gibson has sued Defendant JHS for infringing several of Gibson's guitar body design trademarks. (Compl., Dkt. No. 1.) JHS denies

infringement and seeks cancellation of Gibson's trademarks in its counterclaims. (Am. Answer, Dkt. No. 31.)

In this Motion, Gibson seeks to disqualify Defendant's counsel, Bienstock & Michael, from continuing to represent JHS in this case because of an alleged ethical violation by defense counsel. Gibson argues that this motion is necessary because defense counsel possessed for almost a year an email chain that was Gibson's privileged attorney work product without disclosing the emails to Gibson, prejudicing Gibson in this case. (Mot. Disqualify at 2.)

The email chain was written by Gibson's then-in-house counsel, Amanda Juszkiewicz, and a proposed expert in the guitar industry, Professor Tom Wheeler, who is also alleged to have a juris doctorate. Juszkiewicz was seeking to employ Wheeler as an expert in a different trademark case involving Gibson's "Flying V Body Shape Design," which is one of the trademarks involved in this case. (Id.) The case was in Germany and against another guitar manufacturer, Warwick GmbH & Co. (Id.) Defense counsel in this case, Bienstock & Michael, represent Warwick in cases in the United States. (Id. at 5.) Juszkiewicz sent an email to Wheeler on October 24, 2014, asking if Wheeler would act as an expert in the Germany case. (Dkt. No. 97 (Wheeler emails under seal).) Juszkiewicz also attached a fully written declaration for Wheeler to sign as an expert relating to the Flying V design. (Id.) The email included a boiler plate confidentiality warning labeled "Attorney-Client Work Product" that claimed the contents of the email were privileged. (Id.)

2

On October 26, 2014, Wheeler responded to Juszkiewicz, taking issue with some of the language in the emailed declaration and offering his thoughts as an expert on Gibson's case as presented by Juszkiewicz in the declaration. (Id.) Wheeler's email said he could not agree to the declaration's statements, and then he proceeded to provide substantive feedback on the proposed declaration, never stating in that email that he would not act as an expert in the Germany Warwick case. (Id.) Wheeler is now an expert for Gibson in this current case against JHS, but he was never formally hired as an expert in the Germany Warwick case. (Mot. at 3.) This Gibson-JHS case was filed on January 27, 2014, but Gibson did not retain Wheeler in this case until around August 24, 2015, which is when Gibson informed JHS that Wheeler was retained as an expert. (Compl.; Schuettinger Decl. ¶ 4.)

According to Defendant, Wheeler has known Ronald S. Bienstock, a partner at Bienstock & Michael, for over thirty years as they are members of the music and musical instrument industry and used to work at competing industry magazines. (Opp'n at 2.) On September 12, 2014, Bienstock contacted Wheeler about setting up a meeting as "a few guitar industry matters [had] come up that [he] would like to discuss with [Wheeler]." (Id.) A few email exchanges later and a phone call was set up between the two, which took place "on or around November 5, 2014." (Id. at 3.) Defendant claims the phone conversation related to "discussions of an article recently featured in Guitar Player Magazine about a controversial guitar being auctioned that allegedly belonged to guitarist Les Paul."

(Id.)[1]  Then, the two spoke about current litigation in the industry, including this case of Gibson against JHS.  (Id.)  Wheeler brought up his contact by Juszkiewicz for the Germany Warwick case and said he "could not sign the testimony he was sent."  (Id.)  According to Bienstock, the conversation ended with Bienstock proposing that he may contact Wheeler in the future as an expert in the current Gibson-JHS litigation.  (Bienstock Decl. ¶ 12.)

After the phone conversation, on November 5, 2015, Wheeler — seemingly on his own accord — forwarded the email chain between himself and Juszkiewicz to Bienstock.  (Id.; see also Mot. at 7.)  Gibson was unaware that Wheeler had done this; Wheeler was neither hired as an expert in the current Gibson-JHS litigation at this point nor formally retained by Gibson for the Germany Warwick case.  According to Defendant, "Bienstock & Michael reviewed the Wheeler Email and determined that it had not been inadvertently disclosed, nor did it contain any privileged or work product protected information."  (Opp'n at 3.)

Gibson claims that it informed JHS that it had retained Wheeler as an expert in this case by August 24, 2015.  (Schuettinger Decl. ¶ 4.)  As Defendant points out, this retention was after the date set in the scheduling order for expert disclosures.  (Opp'n at 3.)  Both parties claim the emails were responsive to several discovery requests they have sent each other.  (Mot. at 7; Opp'n at 3.)  Eventually, the email was disclosed to

---

[1] Plaintiff disputes that Wheeler and Bienstock could have been talking about the Les Paul guitar article, claiming that such an article was not published until February 2015 and producing an exhibit purporting to show the magazine in question.  (Reply at 4.)

4

1  Gibson in Defendant's September 15, 2015, supplemental discovery
2  production.  (Mot. at 7.)  This was the same day or the day after
3  the parties filed a joint stipulation extending some scheduling
4  dates, but not those for expert witnesses, per JHS's request.
5  (Reply at 8.)  Gibson never disclosed or described the emails
6  between Wheeler and Juszkiewicz in any privilege logs in this case.
7  (Opp'n at 7.)  At some point, Juszkiewicz left Gibson and Gibson
8  claims it could not access her emails after she left so it had no
9  access to the exchange.  (Reply at 6.)

On October 2, 2015, after Gibson discovered the email chain in Defendant's September 15th discovery response, Gibson sent Bienstock & Michael a letter stating that the Wheeler emails were protected attorney work product.  (Mot. at 7.)  Gibson demanded that counsel destroy the emails and identify any other parties to whom the emails had been disclosed.  (Id.)  Defense counsel refused, arguing that the emails are not protected work product, as well as raising some of its own issues with Gibson, such as Gibson's failure to disclose the emails in a privilege log and the use of a declaration written by the attorney before she had conferred with the expert.  (Opp'n at 7-8.)

After the parties were unable to resolve the dispute informally, Gibson filed the current motion, seeking to disqualify Bienstock & Michael or obtain an order to destroy the emails and sanction the firm based on the conduct relating to the email chain.

**II.  LEGAL STANDARD**

There is some discrepancy in the law to be applied to attorney disqualification cases.  The general rule is that "the district court has primary responsibility for controlling the conduct of

5

attorneys practicing before it." Paul E. Iacono Structural Eng'r, Inc. v. Humphrey, 722 F.2d 435, 438 (9th Cir. 1983). Additionally, in the Ninth Circuit, courts "apply state law in determining matters of disqualification." In re Cnty. of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000).[2] Thus, when a district court adopts a state professional code and relevant court decisions in its local rules, those sources of authority act as "applicable law" when the district court rules on a motion to disqualify an attorney. Iacono Structural Eng'r, 722 F.2d at 439-40. The Central District has adopted "the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." L.R. 83-3.1.2.

The Court must also bear in mind that the "court's authority to disqualify an attorney or craft appropriate relief to punish or deter attorney misconduct derives from the court's equitable powers," and so equitable considerations such as waiver, unclean hands, and estoppel apply. UMG Recordings, Inc. v. MySpace, Inc., 526 F. Supp. 2d 1046, 1062 (C.D. Cal. 2007). The California Supreme Court has similarly noted that "a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification

---

[2] But see also In re Snyder, 472 U.S. 634, 643-45 (1985) (noting that attorney *discipline* in federal courts is conducted under federal, not state, law).

motion." People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1145 (1999).

**III. ANALYSIS**

Both parties in this dispute agree that this is not a situation where Gibson inadvertently disclosed privileged materials in a voluminous discovery production. (Mot. at 14; Opp'n at 1; Reply at 10.) Instead, Gibson alleges that the emails constitute attorney work product and confidential communications with an expert witness, Wheeler, and that defense counsel had an ethical obligation upon receiving attorney work product to at least timely notify Gibson of its possession.

**A.   Work Product**

Determination of what constitutes attorney work product is determined by the Federal Rules of Civil Procedure. See Great Am. Assur. Co. v. Liberty Surplus Ins. Corp., 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009); Bozzuto v. Cox, Castle & Nicholson, LLP, 255 F.R.D. 673, 677 (C.D. Cal. 2009). Generally speaking, attorney work product is "material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial." Bozzuto, 255 F.R.D. at 677. More specifically, the Federal Rules of Civil Procedure ("FRCP") protect from disclosure "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. Pro. 26(b)(4)(B). The Rules also protect from discovery disclosure certain communications between a party's attorney and an expert witness:

> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of

7

```
             the communications, except to the extent that the
             communications:
                  (I)   relate to compensation for the expert's study or
                        testimony;
                  (ii)  identify facts or data that the party's attorney
                        provided and that the expert considered in
                        forming the opinions to be expressed; or
                  (iii) identify assumptions that the party's attorney
                        provided and that the expert relied on in
                        forming the opinions to be expressed.
```

Fed. R. Civ. P. 26(b)(4)(C).

Here, the emails include communications between Gibson's attorney, Juszkiewicz, and a proposed expert witness, Wheeler. The emails include a draft of an affidavit for Wheeler to review as a potential expert, and Wheeler's response email includes substantive portions and comments on that draft affidavit. Thus, the emails facially appear to be trial preparation communications about a draft report between a lawyer and a proposed expert.

Of course, there are issues with an attorney sending a fully written declaration for an expert to sign without any prior contact between the two, although it is not entirely clear if that was the situation here. But the Court does have equitable balancing concerns with Plaintiff's conduct in drafting an expert declaration and sending the draft to an otherwise unretained expert, particularly in an industry with few experts. Upon reviewing the draft Juszkiewicz sent him, Wheeler faced potential disqualification in related cases even if he was not a paid testifying expert.

Further, Gibson was seeking to hire Wheeler as an expert in a different case than the one where it now seeks disqualification, and Gibson did not ultimately formally retain Wheeler as a testifying expert in the case in which the disqualifying emails

8

arose. Thus, Wheeler was not required to provide a report under Rule 26(a)(2)(B), making the strictures of Rule 26 not quite fit comfortably with these facts. But the general principles of attorney work product doctrine and expert draft reports do apply here, particularly as Wheeler's substantive response email makes him more like a consulting expert, even if unpaid, rather than a testifying expert. Wheeler also made no indication in his email response that he was refusing to work with Gibson as an expert or that he did not consent to the confidentiality provision of Juszkiewicz's email.

Therefore, the Court holds that the emails at issue here are attorney work product.

### B. Waiver of Attorney Work Product Protection

Defendant argues that even if the emails constitute attorney work product, the emails are not protected and there is no ethical violation because any privilege was waived by disclosing the product to Wheeler and/or by Wheeler disclosing the product to Bienstock. (Opp'n at 15-17.)

Federal Rule of Evidence 502(g)(2) defines "work-product protection" as: "the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial." If there is an inadvertent disclosure of privileged material in a federal proceeding, then there is no waiver of that privilege despite the disclosure where: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following

9

Federal Rule of Civil Procedure 26(b)(5)(B)."  Fed. R. Evid. 502(b).

As the parties agree the disclosure was not inadvertent, relevant here is the third-party disclosure doctrine.  Generally, "the work product protection is waived where the disclosure of an otherwise privileged document is made to a third party and that disclosure enables an adversary to gain access to the information." In re Syncor ERISA Litigation, 229 F.R.D. 636, 645 (C.D. Cal. 2005).  In California, disclosure by an attorney to a third party only waives the attorney work product protection if the third party "has no interest in maintaining the confidentiality . . . of a significant part of the work product."  Laguna Beach Cty. Water Dist. v. Super. Ct., 124 Cal. App. 4th 1453, 1459 (2004).

Here, Juszkiewicz's disclosure to Wheeler was not a waiver because discussions between counsel and a potential expert do not waive the privilege: there is an understood confidential relationship between the two.  The issue here is whether Wheeler's disclosure to Bienstock waived the privilege, even though Wheeler was not the client or the lawyer who held the privilege.  Wheeler purposefully sent the emails at issue to Bienstock.  At the time that Wheeler sent the emails to Bienstock, Wheeler was not a Gibson expert in this case.  He also had not formally agreed to be an expert in the German Gibson case for which he was contacted, but the emails did pertain to that litigation and in a sense made him a consulting expert because he provided extensive opinions on the draft declaration.  Thus, without a doubt, Wheeler should not have disclosed the emails to Bienstock.

The current Gibson-JHS litigation was already ongoing at the time of the disclosure. Bienstock & Michael were thus subject to California's ethical rules under this District's local rules. A third party's disclosure to an adversary on the one hand seems to fall within the third party doctrine, but because the third party here received the disclosure in a confidential relationship, in California, the privilege was not waived. Wheeler was not the client or the lawyer in the case, and so Wheeler lacked the ability to waive the privilege without a disclosure by Juszkiewicz or Gibson that could have resulted in waiver, such as by sending the emails to a third party without a confidential relationship.

But Bienstock & Michael failed to alert Wheeler of the potential ethical problems with his proposed disclosure, much less inform Juszkiewicz or Gibson of the disclosure after the fact. Further, Bienstock & Michael did not advise Gibson's current counsel at the time Bienstock & Michael learned that Wheeler was acting as expert for Gibson in the present case. This failure to alert Plaintiff of the disclosure was an ethical violation by Bienstock & Michael. This failure was eventually rectified with the discovery disclosure in September. However, this disclosure came too late for Gibson to acquire a new expert in this case because of the stipulation JHS organized regarding the scheduling order. It also came after Bienstock & Michael disclosed the existence of the emails to at least JHS, although counsel represented to the Court at oral argument that the contents of the emails had not gone beyond the firm.

Even if defense counsel believed that the emails were not privileged in this case, whether evidence is privileged is a

determination made by the Court, not defense counsel. Defense counsel should have timely alerted Juszkiewicz and/or Gibson of the disclosure even if they believed that nothing wrong had occurred and they could use the emails. Further, the discovery response's time — right after the stipulation and the end of expert discovery — raises further questions.

Thus, the Court denies Plaintiff's disqualification motion, but extends the time for expert discovery in order to permit Plaintiff to hire a new expert, as set forth in Plaintiff's Supplemental Filing. Plaintiff has sixty days from the date of this Order to retain an expert, provide the expert disclosures to Defendant, and provide dates to Defendant that the expert is available to be deposed. The actual deposition date does not have to be within the sixty day period; however, Defendants have thirty days from Plaintiff's provision of available dates in order to depose the expert. **The following deadlines are also extended: the DEADLINE TO COMPLETE ADR is extended to 5/23/16; the LAST DAY TO FILE MOTIONS is extended to 6/09/16; the FINAL PRETRIAL CONFERENCE is extended to 9/12/16 at 11:00 a.m.; and the 4 DAY JURY TRIAL is extended to 9/20/16 at 9:00 a.m. All other deadlines remain the same.**

There are counterbalancing concerns that the Court has with the conduct of both sides to this dispute. The more significant harm, the Court believes, is Bienstock & Michael's failure to timely acknowledge receipt of work product material. Therefore, the Court will award reasonable attorneys' fees connected to Plaintiff's costs in bringing this motion. Plaintiff is to submit a declaration and supporting documents with the Court within ten

days from the date of this Order to support an attorneys' fees application.  The Court will review the submission and make adjustments as it deems appropriate given the counterbalancing concerns the Court notes above.[3]  Further, the emails cannot be used as evidence, impeachment or otherwise, in this case.  However, defense counsel represented to the Court that the emails have not been disseminated and on that basis, the Court does not order Defendant to disclose its communications regarding the emails, but all copies of the emails must be destroyed and Defendant and defense counsel shall not further disseminate the emails.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS in part and DENIES in part Plaintiff's Motion of Disqualification and Other Ancillary Relief.

IT IS SO ORDERED.


Dated: January 22, 2016

DEAN D. PREGERSON
United States District Judge

---

[3] The Court finds that Plaintiff has responsibility for contributing to the present situation.  Although not entirely clear, Plaintiff appears to have sent the declaration to Wheeler without having a prior substantive discussion with Wheeler.  This conclusion is supported by the fact that Wheeler disagreed with material portions of the declaration.  Following this exchange, Plaintiff failed to proceed carefully by entering into a formal retainer agreement with Wheeler, presumably as a consulting expert, or advising Wheeler that, having received and expressed confidential information, he was not permitted to disclose the information to any third person.  Notwithstanding the criticism here, the Court finds that it is appropriate that Defendant be subjected to a monetary obligation.  In balancing Plaintiff's conduct with that of Defendant, the Court finds that the improper manner in which defense counsel handled the disclosure is the more serious departure from what was required.  The Court will balance the above when assessing the amount of attorneys' fees awarded.