O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIBSON BRANDS, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>   v.<br><br>JOHN HORNBY SKEWES & CO. LTD.,<br><br>             Defendants.<br>_____ | Case No. CV 14-00609 DDP (SSx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS<br><br>[Dkt. No. 125] |

Presently before the court is Plaintiff Gibson Brands, Inc.'s ("Gibson") Motion for Sanctions Under the Court's Inherent Powers. (Dkt. No. 125.) Having considered the parties' submissions, the court denies Plaintiff's Motion.

The litigation history of this case is familiar to the parties and different facets of the case have been set forth in prior Orders from this Court. (See Dkt. Nos. 16, 29, 57, 67, 72, 88, 106.) Gibson's related action against Defendant John Hornby Skewes & Co., Ltd. ("JHS") is also relevant to the present motion. See Gibson Brands Inc., v. Viacom International, Inc. et al., No. CV 12-10870 (C.D. Cal. June 21, 2016) (the "Viacom Matter"). In brief,

this case involves Gibson's allegation that JHS has infringed on several of Gibson's guitar body design trademarks. (Complaint, Dkt. No. 1.) The Viacom Matter involves allegations by Gibson that JHS marketed a SpongeBob Ukulele in violation of another Gibson trademark.

Particularly relevant to the Viacom Matter was a previously-undisclosed agreement between JHS and MTV concerning distribution of the SpongeBob Ukulele in Canada and evidence related to JHS's North American distributor M.I.D.C ("MIDC"). See Gibson, No. CV 12-10870 (C.D. Cal. Jun 20, 2016). In the present motion, Gibson alleges that JHS made further material misrepresentations to the court in this case as part of an effort to continue hiding the JHS-MTV agreement. (Gibson's Motion for Sanctions 1-2.) Specifically, Gibson alleges that JHS withheld all references to MIDC in its depositions, interrogatory responses, and discovery because it would risk revealing the Canada licensing agreement. Evidence about MIDC is relevant to this action because MIDC was previously authorized to market and distribute JHS products in the United States.

As evidence of the deception, Gibson points to Interrogatory Responses filed by JHS's Managing Director Dennis Drumm stating that LPD Musical Instrument and Music Distributors Group were JHS's only distributors in the U.S and do not mention MIDC. (Declaration of Kurt Schuettinger, Ex. 7.) Gibson also notes Mr. Drumm's statement that U.S. distribution began in May 2010, even though MIDC was in operation between 2006 and 2011. (Id.; JHS's Opposition 14.) Further, Gibson notes that JHS failed to turn over catalogs from prior to 2010 and responded to additional discovery requests

2

from Gibson's counsel by asserting that all relevant catalogs had been disclosed. (Shuettinger Decl., Ex. 10.) Gibson has also collected various references from JHS officials acknowledging the existence of MIDC as a North American distributor. (Id., Ex. 15,) Finally, Gibson identifies testimony by JHS Financial Director George Bell that JHS does not distribute in Canada. (Id., Ex. 18.)

JHS responds that its failure to disclose the existence of MIDC was an oversight but denies any bad faith effort to mislead the court. As an initial matter, JHS's counsel note that they first learned of the existence of MIDC on May 2, 2016 after Gibson's filing. (Opp'n 14; Davis Decl. ¶13.) JHS further explains that it overlooked MIDC because it had considered it JHS's Canadian distributor. (Declaration of Dennis Drumm ¶5.) During the years MIDC was in operation, JHS states that it was actively looking for an exclusive U.S. distributor. (Id. ¶¶5-7.) While JHS concedes that MIDC was authorized to make sales in the U.S., it explains that part of its oversight was a result of MIDC selling only ninety-seven guitars at issue in this case from September 2007 to March 2010. (Declaration of Paul Pinchuk ¶3.) With regards to Mr. Bell's testimony, JHS argues that he meant to testify JHS had no Canadian distributors at the time of the deposition, not that JHS never had a Canadian distributor. (Opp'n 8.) Finally, JHS notes that it never denied distributing guitars in the United States and that any errors with regard to the precise dates and sale numbers can be invoked by Gibson as impeachment evidence and for damages calculations if relevant. (Opp'n 1, 5.)

This Court has inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers

3

1 v. NASCO, Inc., 501 U.S. 32 at 44-45 (1991). "Before awarding
2 sanctions under its inherent powers, however, the court must make
3 an explicit finding that [the] conduct 'constituted or was
4 tantamount to bad faith.'" Primus Auto. Fin. Servs., Inc. V.
5 Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Exp.,
6 Inc. v. Piper, 447 U.S. 752, 767 (1980)).

7     Based on the facts before it, this Court cannot conclude that JHS's actions rise to the level of bad faith. The court acknowledges, and indeed shares, some of Gibson's concerns regarding the newly discovered evidence. In particular, the failure to disclose the existence of MIDC, despite requests for information about U.S. distributors and U.S. sale numbers, or to ensure the accuracy of information in sworn depositions and interrogatory responses is of concern. The court also acknowledges, however, counsel for JHS's explanation that they were not aware of these facts prior to Gibson's most recent filings. While sanctions are not merited at this time, the court expects full compliance with discovery obligations. The court also notes that, without prejudging admissibility in this case, parties may be able to refer to and argue about alleged discovery abuses as such abuses may be relevant to credibility or other issues in the trial.

IT IS SO ORDERED.

Dated: June 21, 2016

                                          DEAN D. PREGERSON
                                          United States District Judge