O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GIBSON BRANDS, INC., a Delaware corporation, | ) ) ) | Case No. CV 14-00609 DDP (SSx) |
| Plaintiff, | ) ) | **AMENDED ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | ) ) | [Dkts. 146, 147, 148] |
| JOHN HORNBY SKEWES & CO. LTD., | ) ) ) | |
| Defendants. | ) ) | |

Presently before the court are: (1) Plaintiff Gibson Brands' ("Gibson") Motion for Summary Judgment; (2) Defendant John Hornby Skewes & Co. Ltd.'s ("JHS") Motion for Partial Summary Judgment on the Affirmative Defenses of Acquiescence and Laches; and (3) Defendant JHS's Motion for Partial Summary Judgment on Counts II, V, and VII of the Complaint, Likelihood of Confusion on All Claims and Lack of Secondary Meaning. After considering the parties'

submissions and hearing oral argument, the court enters the following Order.[1]

## I. BACKGROUND

As set forth more fully in the court's previous Order, this case arises out of a trademark dispute between Gibson and JHS. (See Dkts. 16, 29, 57, 67, 72, 88, 106, 141.) Both Gibson and JHS are manufacturers of musical instruments, including electric guitars. (See Decl. Dennis Drumm ¶ 3; Compl. ¶¶ 10-15.) Gibson is a United States-based manufacturer, which has registered several trademarks on guitar body shapes and headstocks, including the "SG Body Shape Design," "Explorer Body Shape Design," "ES Body Shape Design," "Flying V Body Shape Design," "Flying V Peghead Design," and the "Kramer Peghead Design" (collectively "Gibson Marks"). (Compl. ¶¶ 10-15; Exs. A-F.) JHS is a United Kingdom-based manufacturer that began selling guitars in the U.S. in 2006.[2] Gibson's suit alleges that certain guitars sold by JHS infringe on the Gibson Marks and violate Gibson's rights under federal and state trademark law, false advertising law, and unfair competition law. (See generally, Compl.) While the parties do not agree on the precise number of allegedly infringing guitars at issue, Gibson's most recent filing estimates that there are at least 300 such guitars. (Pl. Mot. Summ. J. 24.) Gibson now seeks summary judgment on all issues and JHS

---

[1] This Order hereby vacates and supercedes the court's Order Re: Cross-Motions for Summary Judgment issued September 29, 2016.

[2] According to JHS's most recent filings, the company began selling guitars in the U.S. in 2006. (See Drumm Decl., Dkt. 147 at 2, 6.) Earlier, the company had represented that it began selling guitars in the U.S. in 2010. (See Dumm Dep. at 21:5-10, attached as Ex. Y to Shuettinger Decl.)

2

seeks partial summary judgment on Counts II, V, and VII of Gibson's Complaint as well as on the affirmative defense of laches or acquiescence as to claims arising out of one of Gibson's patents. Rather than recount the lengthy factual and procedural history of this case in full, the court will address additional background only as needed to resolve the pending motions.

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of

3

an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. DISCUSSION**

    **A.   JHS's Affirmative Defenses: Laches and Acquiescence**

Before addressing the parties' cross-motions for summary judgment on Gibson's claims, the court first considers JHS's affirmative defenses of acquiescence and laches with regards to claims arising from Gibson's U.S. Trademark Registration No. 2,215,791, also known as the "SG Body Shape" or the "'791 Body Shape." (Compl. ¶ 1, Ex. A.) The crux of JHS's argument on this issue is that Gibson not only waited more than nine years to bring suit against JHS for producing an allegedly infringing guitar, it also approved JHS's use of the SG Body Shape. Gibson disputes any

4

such agreement and notes that the pertinent discussions concerned JHS's activities in the United Kingdom and took place long before JHS began doing business in the United States. The relevant facts are as follows.

In 1994, Gibson and JHS entered into an agreement, which allowed JHS to sell guitars that utilized a certain single cutaway body shape, not at issue in this case (the "Les Paul Body Shape"), with Gibson's consent. (Drumm Decl. ¶¶ 7,8, Ex. A.) In 2004, however, JHS received a cease-and-desist letter from Gibson's attorneys asking JHS to stop producing guitars that infringe on Gibson's Les Paul and SG trademarks. (Drumm Decl., Ex. B.) JHS responded to the letter by reminding Gibson about the previously negotiated agreement regarding the single cutaway Les Paul shape. (Drumm Decl., Ex. C.) With regard to the double cutaway shape, which Gibson claimed infringed on the SG Body Shape, JHS explained that it "incorporate[d] significant detail changes" to avoid confusion with Gibson's guitars and noted that Gibson "holds no UK registration" on the SG Body Shape. (Id.) Nonetheless, JHS concluded that it was "willing to consider [Gibson's] suggestions, for detail revisions to our design of our double cutaway model . . . to enable your client to be satisfied with the difference between our unique design and your clients unregistered designs and marks." (Id.) Taking up JHS's request for suggestions, Gibson replied that "[o]thers have typically exaggerated the asymmetrical nature of the design by lifting the lower left portion of the guitar and extending the upper left horn on the guitar." (Drumm Decl., Ex. D.)

In response to its correspondence with Gibson, JHS contends that it made the suggestions to the double cutaway body shape

5

(called the "VS6" by JHS). On December 15, 2004, JHS received another letter from Gibson, which stated:

> On your double cutaway, in the past you said that you made changes to distinguish it from Gibson's SG BODY SHAPE. We assume that you mean your LVS6 with the exaggerated horn. However, your VS6 is not as distinctive. Therefore, Gibson requests that you exaggerate the horn on the VS6 series in the same manner as the LVS6.

(Drumm Decl., Ex. E at 7.) On December 21, 2004, JHS wrote back to Gibson explaining:

> With regard to our guitars Model Nos. VS6 and LVS6, we are confident there is no confusion in the marketplace. . . . the VS6/LVS6 horn shapes are mirror images of one another and the "exaggerated" horn is used on both right-handed and left-handed models. Perhaps the website images do not clearly show this – but it is factual."

(Drumm Decl., Ex. G.) Neither party has stated that there was any follow-up to this final message. At some point after this exchange, JHS began selling guitars with the SG Body Shape in the United States. (Drumm Decl. ¶ 6.) On January 27, 2014, Gibson initiated this lawsuit against JHS, including its claims arising from the SG Body Shape trademark. JHS contends that it reasonably relied on Gibson's 2004 correspondence as an "active representation" that JHS's VS6 guitar did not infringe on the SG Body Shape trademark, and that it is entitled to summary judgment on an affirmative defense of laches or acquiescence to any claims Gibson now brings relying on this particular mark. (JHS Mot. Summ. J. Aff. Def. 3.)

**1. Laches**

"'Laches is an equitable time limitation on a party's right to bring suit,' resting on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights.'" <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835 (9th Cir. 2002) (citations omitted). Defendants who assert laches must prove that "(1) [Plaintiff's] delay in filing suit was unreasonable, and (2)

6

[Defendants] would suffer prejudice caused by the delay if the suit were to continue." Id. at 838. "The limitations period for laches starts 'from the time the plaintiff knew or should have known about its potential cause of action.'" Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006) (citation omitted).

JHS argues that it is entitled to summary judgment on its laches defense as to the SG Body Shape because Gibson waited more than nine years to bring a lawsuit. According to JHS, Gibson first became aware of JHS's potential infringement on April 20, 2004, when Gibson sent a letter asserting that JHS guitars infringed on the SG Body Shape trademark that Gibson had registered in the United States. (JHS Mot. Summ. J. Aff. Def. 11.) It did not initiate the instant litigation, however, until January 27, 2014. (Id.; see generally Compl.) Typically, the presumption of laches is triggered when a suit is brought outside the statute of limitations. See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002). The Ninth Circuit has "considered both the three-year limitations period for fraud as provided in California Civil Procedure Code § 338(d), and the four-year limitations period for California trademark infringement as provided in California Business and Professions Code § 17208, to be analogous limitations periods for Lanham Act claims." Derek & Constance Lee Corp. v. Kim Seng Co., 391 Fed. Appx. 627, 628 n. 1 (9th Cir. 2010). In this case, given that Gibson waited at least five years past the relevant statute of limitations, JHS argues that the presumption of laches should apply.

Gibson responds that JHS's laches defense is unavailing because a court determining the start date of laches must "'focus on the conduct upon which the claimant bases its infringement claim.'" (Opp'n JHS Mot. Summ. J. Aff. Def. 5 (quoting Tillamook County Smoker, Inc. V. Tillamook County Creamer Ass'n, 311 F. Supp. 2d 1023, 1032 (D. Or. 2004), aff'd 465 F.3d 1102 (9th Cir. 2006)).) In the present action, Gibson argues that the relevant date is not when Gibson first contacted JHS about an allegedly infringing guitar in 2004 but instead when JHS first sold those guitar in the U.S. market, giving rise to a Lanham Act claim. (Opp'n JHS Mot. Summ. J. Aff. Def. 5.) According to Gibson, it first learned that JHS was selling guitars in the U.S., including those that allegedly infringed on the SG Body Shape, in 2011 and it sent its first cease and desist letter in December 2011. (See Mitchell Decl. ¶ 8.) From there, Gibson took approximately two years to exchange letters with JHS and conduct an investigation before filing suit in January 2014.

In its reply, JHS reasserts that the clock on Gibson bringing any action related to the SG Body Shape began running in 2004 but JHS does not contend that Gibson knew or should have known about any U.S. sales of allegedly infringing guitars prior to 2011. (See Reply JHS Mot. Summ. J. Aff. Def. 9-10.) While there continues to be ambiguity about when precisely JHS began selling guitars in the U.S., that is largely a result of JHS's changing assertions about its entry into the U.S. market. (Compare Schuettinger Laches Dec, Ex. A (2010) with Dkt. 129 (2007) and Dkt. 147, Drumm Decl. ¶6 (2006).)

The timeline on a laches defense is calculated "from the time the plaintiff knew or should have known about its potential cause of action." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002); see also ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 70 (2d Cir.2002) ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known . . . that [it] had a provable infringement claim against defendant."). Here, Gibson did not have an actionable cause of action under trademark law until JHS began importing guitars into the United States. Further, JHS has not provided, nor has the court identified, any authority, which suggests that laches in the trademark context begins to run when a potentially infringing product is identified extraterritorially. To the contrary, at least one court in this Circuit has denied a similar laches claim in the copyright context. See Hearst Corp. v. Stark, 639 F. Supp. 970, 981 (N.D. Cal. 1986). In Hearst Corp., Plaintiffs brought suit alleging copyright violations of books that were lawfully produced abroad and then imported into the United States. Even though some of these books had early publications dates, the court denied defenses of laches, estoppel, and statute of limitations on the grounds that the clock did not start until the "defendant imported those books into the United States." Id. at 981 n.13. Likewise, the record in this case supports Gibson's contention that it did not know about its potential claim until 2011 and JHS presents no argument that Gibson reasonably should have known about the potential infringement in the United States at

9

an earlier date. Thus, the court DENIES JHS's Motion for Summary Judgment as to its Affirmative Defense of Laches.

### 2. Acquiescence

The elements of a prima facie case for acquiescence are: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 989 (9th Cir. 2010). Some courts have elaborated on this standard to explain that "'[e]stoppel by acquiescence includes the two elements of laches . . . and adds (3) affirmative conduct inducing the belief that [the plaintiff] has abandoned its claim against the alleged infringer, and (4) detrimental reliance by infringer.'" AirWair Int'l Ltd. v. Schultz, 84 F. Supp. 3d 943, 956 (N.D. Cal. 2015) (quoting E & J Gallo Winery v. Pasatiempos Gallo, S.A., 905 F. Supp. 1403, 1414 (E.D. Cal.1994)).

As with the laches defense, JHS's acquiescence defense turns on a difference of interpretation regarding the 2004 correspondence and JHS's subsequent sale of guitars in the United States. According to JHS, the first prong of an acquiescence defense was satisfied because the 2004 exchange constituted an active representation that Gibson would not assert its SG Body Shape trademark against JHS for producing the VS6 model guitars. (JHS Mot. Summ. J. Aff. Def. 6.) The second element was satisfied because Gibson waited nine years between making that representation and bringing an action against JHS and the third element was

10

1  satisfied because JHS relied on Gibson's representations when it
2  made its decision to sell its guitars on the United States.
3       Gibson challenges the acquiescence defense by arguing that the
4  2004 exchange cannot reasonably be understood as a representation
5  that Gibson would not assert its trademark rights against JHS,
6  especially not if JHS began selling guitars in the United States.
7  (Opp'n JHS Mot. Summ. J. Aff. Def. 9.) As the record confirms, the
8  correspondence addresses only extraterritorial sales, as JHS did
9  not sell any guitars in the U.S. in 2004. (See Drumm Decl., Exs. A,
10 E.) Without opining on what Gibson's silence at the conclusion of
11 the 2004 exchange might mean for JHS's UK sales of the VS6, the
12 court finds that it cannot be understood as a blanket concession
13 that JHS's guitar did not infringe on Gibson's trademark nor can it
14 be interpreted as consenting to JHS doing business in the United
15 States where Gibson had potentially actionable trademark rights. A
16 party might decline to litigate extraterritorial trademark
17 violations for any number of reasons, while still intending to
18 prosecute any claim that might arise in the domestic context. But
19 even assuming that JHS reasonably relied on the 2004 exchange, the
20 acquiescence defense fails at the second prong for substantially
21 similar reasons as the laches defense. The second prong asks
22 whether there was an inexcusable "delay between the active
23 representation and assertion of the right or claim." Seller Agency
24 Council, 621 F.3d at 989. As discussed above, notwithstanding any
25 representation Gibson may have made, it prosecuted its trademark
26 claim within a reasonable period of time from learning of any
27 potentially actionable conduct by JHS. Thus, the court also DENIES
28

11

JHS's Motion for Summary Judgment on its affirmative defense of acquiescence.

**B.  Cross-Motions for Summary Judgment on Gibson's Complaint**

Both parties have filed cross-motions for summary judgment on the substantive allegations in Gibson's complaint. Specifically, JHS seeks summary judgment on Count II, V, and VII of the Complaint and on the issues of likelihood of confusion and lack of secondary meaning. (See Dkt. 146.) Gibson seeks summary judgment on all claims. (See Dkt. 148.)

**1. Count II: Trademark Counterfeiting Claim**

Count II of Gibson's Complaint alleges that JHS intentionally used a counterfeit of the Gibson Trademarks in commerce, knowing that the marks were a counterfeit. (Compl. ¶¶ 38-40.) JHS contends that it is entitled to judgment as a matter of law on the counterfeiting count because every JHS guitar prominently displays a brand name of JHS and all advertising and packaging state that the guitars emanate from JHS. (Def. Mot. Summ. J. 5.)

The Lanham Act prohibits a counterfeit mark from being used "in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1116(d)(1)(A). The Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." Id. § 1127. As one district court has explained, "counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012)

(citing 4 McCarthy on Trademarks § 25:10); see also McCarthy, § 25.01[5][b] ("[T]he Lanham Act carves out 'counterfeit' as a more egregious type of 'colorable imitation.' When courts have used the term 'counterfeit,' it has usually been in the context of invoking greater discretionary remedies.").

For purposes of resolving Gibson's counterfeiting claim, the operative question is whether JHS uses marks that are "identical" or "substantially indistinguishable" from Gibson's marks. "The caselaw on what is required to plead identicality in a counterfeiting claim is understandably thin, as the majority of counterfeiting cases involve obviously identical marks." Adams v. Grand Slam Club/Ovis, No. 12-CV-2938-WJM-BNB, 2013 WL 1444335, at *6 (D. Colo. Apr. 9, 2013) (collecting cases); see, e.g., Idaho Potato Commn v. G&T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005) (affirming a finding of counterfeiting where defendant purchased empty potato bags containing plaintiff's marks and then packaged their own potatoes into those bags). At least one court reviewing the case law has concluded that "courts have uniformly applied this provision to products that are stitch-for-stitch copies of those of another brand." Gucci Am., 868 F. Supp. 2d at 242. The Ninth Circuit has explained that a "counterfeit is something that purports to be something that it is not." United Pac. Ins. Co. v. Idaho First Nat. Bank, 378 F.2d 62, 69 (9th Cir. 1967).

JHS argues that, as a matter of law, it cannot be held liable for counterfeiting Gibson's marks because every allegedly infringing guitar (i.e., guitars that are comprised of either an allegedly infringing body shape or headstock) bears the JHS trade

13

name, and there is no evidence that they are counterfeits of the
Gibson body shapes or headstocks. (Def. Mot. Summ. J. 6.) In
support, JHS notes that a guitar is typically identified by the
name on the guitar. (Defs Oppn Pl. Mot. Summ. J. 1.) JHS also
identified evidence from Gibson's own representatives and experts
that confirm the view that a Gibson guitar is not identified solely
by its shape. (See Dep. Walter Carter, attached to Davis Decl. Ex.
1, at 117:9-117: 10 ("If you want to know who made a guitar, you
should look at the name that's on the guitar. That's common
sense."); Deposition of Gibson Brands, Inc., attached Davis Decl.
Ex. 2, at 63:11-14. ("I don't know who manufactured this guitar.
It's a Gibson body shape, certainly, but as we can't see anything
else, I can't tell you for certain who made that guitar.").) In
this case, JHS explains, every guitar headstock was printed with
the JHS trade name-the word "Vintage" in a stylized font-on the
front and the JHS trademark-"Vintage A John Hornby Skewes
Product"-on the back. (See Dkt. 177-5, Exs. 3, 4; Shuettinger Dec.,
Ex. L.). Thus, JHS contends there can be no genuine dispute that
the guitars were counterfeits of Gibson guitars. (Def.'s Opp'n
Pl.'s Mot. Summ J. 5-6.).

    Gibson contends that the word "Vintage," stylized or not,
cannot serve to defeat the counterfeiting claim because a
reasonable consumer could still find that a JHS guitar bodyshape or
headstock was identical or substantially indistinguishable from a
Gibson. (Pl.'s Oppn Def. Mot. Summ. J. 2.) This is because, in
Gibson's view, the word "vintage" might be misunderstood as
indicating the age of a guitar rather than as a brand name or
source identifier. (Id.) In support, Gibson points to the testimony

14

of one of JHS's own sales manager who stated that U.S. consumers were confused by the trade name Vintage because they thought it meant old and not that it was the guitar brand. (Shuettinger Dec., Ex. A.) Gibson also details several other instances where individuals were confused by the brand name Vintage and misidentified a JHS guitar as a Gibson. (Pl.'s Opp'n Def. Mot. Summ. J. 4.)

Furthermore, Gibson contends that the marking on the back of the guitars, which read "Vintage A John Hornby Skewes Product," is also inadequate to immunize JHS from a counterfeiting claim. Gibson notes that the text is placed in a location where the consumer is unlikely to see it and printed in a small font that is difficult to read. (Id. 10.) Although appropriate labeling can defeat a counterfeiting claim, Gibson points to a New York district court decision granting summary judgment against a defendant that produced counterfeit Tiffany rings even though the inside of the ring was stamped with a non-Tiffany mark. Tiffany and Co. v. Costco Wholesale Corp., 127 F. Supp. 3d 241, 255 (S.D.N.Y. 2015) ("Costco has offered no evidence that the stamping of these rings with generic marks has done anything to alleviate confusion; rather, at least six customers who purchased these generically stamped rings were confused as to their source.").

Having reviewed the record submitted by the parties, and after examining the various photographs of the guitars in question, the court concludes that no reasonable jury could find that JHS used counterfeit Gibson marks. Without determining the specific level of similarity, if any, between the guitars, the court finds that the body shapes and headstocks of the JHS guitars in question are not

identical or substantially indistinguishable from the Gibson body shapes and headstocks. Aside from certain visual distinctions between the headstocks and body shapes in question, as both JHS and Gibson acknowledge, guitars are typically identified by the branding on the headstock. To the extent that Gibson allegedly relies on its body shape and headstock shape as a source identifier, no rational jury could find that a particular body shape or headstock stamped with a different guitar brand is a counterfeit of a Gibson trademark. Here, JHS's guitars are marked with the "Vintage" branding on the front and the JHS trademark on the back. Although marking of a different source indicator may not always defeat a counterfeiting claim, Gibson has failed present evidence that the Vintage marking in this case does not nullify the counterfeiting claim. As to Gibson's contention regarding the ambiguity of the word "vintage," the court concludes that even if a consumer might read an advertisement of a "Vintage" guitar as reference to an older guitar, it is implausible that a consumer looking at a guitar would understand the stylized Vintage logo to be an indicator of the guitar's age rather than a brand name.

Admittedly, there are situations where an inconspicious disclaimer might be insufficient to immunize a defendant from a counterfeiting claim regarding a trademark of a particular design or shape of a product. But those situations "must, at the very least, [ ] be closer than the traditional standard for infringement, 'colorable imitation.'" Tiffany, 127 F. Supp. 3d at 254. For instance, in Tiffany, Costco sold rings that were essentially copies of Tiffany's in a glass case that was marked with the actual Tiffany trademark. Id. at 255. The only effort to

16

distinguish the imitations was a small generic mark on the inside of the ring. Id. Given those circumstances, the court granted summary judgment noting that "[t]here is no statutory requirement that the counterfeit mark be placed on the product itself." Id. The evidence here does not rise to that level. To find that anything less than an "identical" or "substantially indistinguishable" product can give rise to a counterfeit claim would risk rendering "all trademark infringement claims . . . counterfeiting claims," and, along with it, open up the wider range of statutory penalties and remedies. Adams, 2013 WL 1444335 at *7. Accordingly, the court GRANTS JHS summary judgment on Count II of Gibson's Complaint for counterfeiting and DENIES Gibson's cross-motion for summary judgment on the counterfeiting claim.

      **C.    Count VII: Trademark Dilution under California State Law**

     Count VII of Gibson's Complaint alleges trademark dilution under California Business and Professions Code section 14330. JHS argues that it is entitled to summary judgment on this count because section 14330 was repealed in 2007, six years prior to when Gibson filed this action. Gibson responds that it is not required to name any statute in its Complaint and that, even if it misidentified the statutory basis for relief, its allegations instead satisfy the requirements for stating a similar claim under section 14247.

     This Court is not the first to address whether a claim under section 14330 can survive despite the statute's repeal. The typical course has been to dismiss the claim. See, e.g., Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1090 (N.D. Cal. 2008) (quoting People v. One 1986 Toyota Pickup, 31 Cal. App. 4th 254,

17

262 (Ct. App. 1995) (dismissing section 14330 claim and noting that "'The repeal of a statute creating a penalty, running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty.'"); see also Emeco Indus., Inc. v. Restoration Hardware, Inc., No. C-12-5072 MMC, 2012 WL 6087329, at *3 (N.D. Cal. Dec. 6, 2012) (dismissing section 14330 claim even though Plaintiff urged the court to evaluate the arguments under section 14427 in the alternative); Brown v. Green, No. C 12-2113 DMR, 2012 WL 4120379, at *6 (N.D. Cal. Sept. 18, 2012) (dismissing section 14330 claim); but see Mattel, Inc. v. MGA Entm't, Inc., 782 F. Supp. 2d 911, 1011–12 (C.D. Cal. 2011) (noting that the section 14330 claim fails and going to explain that, "[t]o the extent MGA seeks to have its claim evaluated under Cal. Bus. & Prof. Code § 14247," the claim also fails). Here, the court concludes that the most appropriate course is to follow the majority of other district courts and dismiss Count VII of Gibson's Complaint.

### D. Remaining Claims

As to all remaining claims, having considered the admissible record evidence, the court finds there are triable issues of fact and DENIES the cross-motions for summary judgment.

## IV. CONCLUSION

For the reasons stated above, the court DENIES JHS's Motion for Summary Judgment on the Affirmative Defenses of Acquiescence and Laches. Further, the Court GRANTS IN PART and DENIES IN PART JHS's Motion for Summary Judgment on Counts II, V, and VII of the Complaint, Likelihood of Confusion on All Claims and Lack of Secondary Meaning. Specifically, the court GRANTS JHS summary

judgment on Count II of Gibson's Complaint and DISMISSES Count VII of Gibson's Complaint. Finally, the court DENIES Gibson's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: December 29, 2016

DEAN D. PREGERSON
United States District Judge

19