O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GIBSON BRANDS INC., | ) | Case No.  CV 14-00609 (SSx) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING CERTIFICATION** |
| | ) | **FOR INTERLOCUTORY APPEAL** |
| v. | ) | |
| | ) | [Dkt. 258] |
| JOHN HORNBY SKEWES & CO., LTD., | ) | |
| ET AL , | ) | |
| | ) | |

Presently before the court is Plaintiff Gibson Brands, Inc.'s Motion to Certify Order for Interlocutory Appeal. Having reviewed the parties' submissions, the court DENIES the Motion and adopts the following Order.

**I. BACKGROUND**

On September 29, 2016, this Court issued an Order granting in part and denying in part cross-motions for summary judgment filed by Plaintiff Gibson Brands, Inc., ("Gibson") and Defendant John Hornby Skewes & Co. Ltd. ("JHS"). (Dkt. 249 ("SJ

Order").)[1] The factual background of the case is set forth in the SJ Order, as well as numerous previous orders of this Court. (*See* SJ Order; *see also* Dkts. 16, 29, 57, 67, 72, 88, 106, 141.) In the SJ Order, the court granted JHS summary judgment on Count II of Gibson's complaint for trademark counterfeiting. (SJ Order 12-16.) Gibson seeks to certify the court's determination as to counterfeiting for interlocutory appeal.[2] Specifically, Gibson seeks certification of the following question: "Whether a counterfeiting claim based on the Lanham Act requires the entire goods or rather only the trademark(s) to be identical or substantially indistinguishable."

## II. LEGAL STANDARD

28 U.S.C. § 1292(b) permits a district court to certify an issue for interlocutory appeal if the following three elements are met: (1) there is a controlling question of law; (2) there are substantial grounds for differences of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Interlocutory appeals should be granted "only in extraordinary cases," and not "merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).

## III. DISCUSSION

The court begins its analysis with the "controlling question of law" prong. Although Congress has not specifically defined what it meant by "controlling," the Ninth Circuit has explained that "the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982) (citing *United States Rubber Co. v. Wright*, 359 F.2d 784, 785

---

[1] Although Gibson did not seek clarification or reconsideration of the Court's Summary Judgment Order, the court has nonetheless revised the Order in light of the concerns Gibson has raised in the instant Motion. The Amended Order was issued on December 29, 2016. (Dkt. 270.)

[2] Because of the voluminous filings in this litigation, the court has required the parties to seek permission before making any additional filings. (*See* Dkt. 248.) In accordance with that requirement, Gibson filed a request for leave to file a motion for certification of an interlocutory appeal, which the court subsequently granted. (*See* Dkts. 255, 256.)

1   (9th Cir. 1966) (per curiam)). With this constraint in mind, a "controlling question of law"

2   has been defined as one where "resolution of the issue on appeal could materially affect

3   the outcome of litigation in the district court." *Id.* By contrast, if "an interlocutory appeal

4   would delay resolution of the litigation, it should not be certified." *Sullivan v. Kelly Servs.,*

5   *Inc.,* No. C 08-3893 CW, 2010 WL 1445683, at *1 (N.D. Cal. Apr. 7, 2010) (citing *Shurance v.*

6   *Planning Control Int'l, Inc.,* 839 F.2d 1347, 1348 (9th Cir. 1988)).

7           The question of law Gibson seeks to certify is whether a court should evaluate a

8   trademark counterfeiting claim—such as the one brought here on the basis of trademarks

9   as to a guitar's body shape and headstock—by considering the product as a whole or

10  only the specific trademarks at issue. In Gibson's view, the SJ Order erroneously focused

11  on whether the products as a whole were identical or substantially indistinguishable

12  instead of limiting the inquiry to only the specific body shape and headstock trademarks.

13  Before addressing the interlocutory appeal factors, the court notes that this reading of the

14  SJ Order misunderstands the basis of the court's conclusion as to the counterfeiting claim.

15  Although Gibson has not moved for clarification or reconsideration of the SJ Order, the

16  court has nonetheless issued an Amended Order to clarify the decision and address

17  Gibson's concerns. The court briefly discusses the implication of that clarification here.

18          As stated in the original SJ Order, a counterfeiting claim under the Lanham Act

19  turns on whether there is use of "a spurious mark which is identical with, or

20  substantially indistinguishable from, a registered mark." 15 U.S.C. § 1116(d)(1)(A). As

21  Gibson notes in the instant motion, both the text of the Lanham Act and Ninth Circuit

22  case law focus on the likeness of the trademark at issue and not the product as a whole.

23  *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,* 658 F.3d 936, 946 (9th Cir. 2011)

24  ("Section 1116(d) requires that the mark in question be (1) a non-genuine mark identical

25  to the registered, genuine mark of another, where (2) the genuine mark was registered for

26  use on the same goods to which the infringer applied the mark.") The operative question

27  in this case is when is one mark identical to or substantially indistinguishable from

28  another mark. Put in more general terms, the challenge is not determining the test for

what constitutes *counterfeiting* but rather what constitutes a *counterfeit*. The case law on this particular point is understandably limited because most counterfeiting cases address obviously identical marks placed on identical goods, *see Adams v. Grand Slam Club/Ovis*, No. 12-CV-2938-WJM-BNB, 2013 WL 1444335, at *6 (D. Colo. Apr. 9, 2013), or so-called "stitch-for-stitch copies," *see Gucci Am., Inc. v. Guess?, Inc.*, 868 F.Supp. 2d 207 (S.D.N.Y. 2012). Here, however, the products are not such stitch-for-stitch copies. Instead, Gibson has asserted trademarks for particular guitar body shapes and headstock shapes, which it contends JHS has counterfeited by producing guitars that utilize identical or substantially indistinguishable body shapes and headstocks. JHS responds that that body shapes and headstocks are not identical or substantially indistinguishable, nor could they be as a matter of law because the allegedly infringing body shapes and headstocks are marked with alternative source indicators: the JHS "Vintage" mark in stylized font on the front of the guitar and the JHS trademark "Vintage A John Hornby Skewes Product" on the back.

Contrary to Gibson's reading of the SJ Order, the court did not resolve the counterfeiting claim on the grounds that Gibson's guitar products as a whole were not identical or substantially indistinguishable to JHS's guitar products. Rather, the court considered the narrower question of whether JHS's guitar body shapes and headstocks can be considered a counterfeit of Gibson's trademarks if the allegedly counterfeit JHS guitar body shapes and headstocks are marked with an alternate source indicator. On this point, there is little guidance from the Ninth Circuit other than a case opining that a "counterfeit is something that purports to be something that it is not." *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967).[3] Ultimately, the court resolved the counterfeiting claim by concluding that there is no triable issue that the body shapes and

---

[3] In the instant Motion, Gibson curiously challenges the relevance of *United Pac*, explaining that it was limited to analyzing the meaning of a "a counterfeit check under Idaho law and the UCC," given that it was Gibson which first relied on the case and directed the court's attention to it in its summary judgment papers. (*Compare* Mot. Certify Order for Interlocutory Appeal 4 *with* Pl.'s Opp'n Def.'s Mot. Summ. K. (Dkt. 221) at 13.)

headstocks of the JHS guitars are counterfeits of either the Gibson body shape or headstock trademarks given the visual distinctions between the particular body shapes and headstocks and the distinct source identifiers on the JHS body shapes and headstocks. This conclusion was reinforced by the court's understanding that if "[t]he purpose of a trademark is to help consumers identify the source," *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999), it would be incongruous to conclude that JHS has counterfeited Gibson's body shape and headstock trademarks by selling guitars that are marked as originating from an entirely different source.

In light of this clarification, as well as the Amended Order issued on December 29, 2016, the court finds that Gibson's Motion does not present a controlling question of law. The question Gibson asks the Ninth Circuit to address would not "materially affect the outcome of this litigation" because it relies on a misreading of the SJ Order. Moreover, while the parties' arguments as to the instant motion suggest that there is a diversity of views as to whether a counterfeiting claim should be evaluated by comparing only the trademarks in question or the products as a whole, an answer to that question would not alter the court's resolution of the counterfeiting claim in this case. If the court is directed to examine the products as a whole, there is no triable counterfeiting claim, but even if the court is limited to examining only the trademarks themselves, the court would still conclude that, due to the alternate source indicators stamped on the trademarks and the visual distinctions between the body shapes and headstocks, there is no triable counterfeiting claim.

Gibson has also failed to satisfy the third element of the interlocutory appeal test and demonstrate that certifying an interlocutory appeal would "materially advance the ultimate termination of the litigation" 28 U.S.C. § 1292(b). Gibson's Complaint asserts ten counts against JHS. The court's SJ Order denied summary judgment on eight of those counts and scheduled a trial that is now set for February 28, 2017. (*See* Dkt. 256.) As to the remaining issues, the court granted JHS summary judgment on one count and dismissed the other count because it was based on an outdated statute. (*See* SJ Order 18.) The parties

are presumably well into trial preparation and deadlines have been set for motions in limine and a final pretrial conference within the next two months. Gibson proposes delaying this litigation for an extended period to seek review of a single, discrete claim that the court has found lacks merit. Under these circumstances, where a trial verdict would be rendered long before an appeal could run its course, courts have denied motions for interlocutory appeal. *See, e.g., Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (denying interlocutory appeal where "an appeal probably could not be completed before July, 1988, when trial is currently scheduled").

**IV. CONCLUSION**

For the reasons stated above, the court DENIES Gibson's Motion to Certify Order for Interlocutory Appeal.

**IT IS SO ORDERED.**

Dated: December 29, 2016

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE